Charles TOBIAS, Harry Tobias, Henry Tobias and Tobey Music Corporation, Plaintiffs,

v.

JOY MUSIC, INC., Defendant.

United States District Court
S. D. New York.

March 6, 1962.

Schulman & Stern, New York City, for plaintiffs (John Schulman and Thomas R. Levy, New York City, of counsel).

Julian T. Abeles, New York City, for defendant (Julian T. Abeles, and John S. Clark, New York City, of counsel).

COOPER, District Judge.

This is an action for a declaratory judgment brought pursuant to 28 U.S.C. § 2201, to determine the ownership of the renewal copyright of the song, "Miss You."

The lyrics and music for this song were written by the three individual plaintiffs herein, and plaintiff Tobey Music Corporation is a personal corporation to which they now purport to have assigned the song's renewal copyright. Defendant is a music publisher and the successor in interest of Santly Bros., Inc., which originally published and secured the rights to the song in 1929 under the provisions of a contract with the three individual plaintiffs.

In 1957 plaintiffs (hereinafter referred to as "the authors") instituted this action for a declaratory judgment that they are the sole owners of the renewed copyright in "Miss You" and for an injunction restraining defendant from infringing that copyright. Defendant by way of defense asserts its ownership of the renewed copyright pursuant to the provisions of the 1929 contract with the authors and asks for like relief in its favor. Defendant in essence takes the position that, as Santly Bros.' successor, it held the right under that contract, to the renewal of the song's copyright and the concomitant right, by implication, to apply for such renewal in the name of the authors. Thus, the critical issues revolve around the effect and scope of the 1929 agreement assigning the rights in the song.

Briefly stated, plaintiffs maintain (1) that the contract under which defendant claims does not convey renewal rights; (2) that even if the instrument grants defendant a right to apply for copyright renewal, it provides no basis for defendant's application for such renewal in the name of the authors; and (3) that in any event inequitable consideration for the authors' assignment of the rights to the song renders the 1929 agreement unenforceable and precludes a declaration that defendant is the legal owner of such rights.

Subsequent to the commencement of this action, the Second Circuit Court of Appeals handed down its decision in Rose v. Bourne Music, Inc., 279 F.2d 79 (1960) cert. denied, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); and that case seems plainly controlling and dispositive of many of the identical contentions raised in this action. The facts in the case at bar and the applicable law lead the court to conclude that the 1929 instrument constituted a valid, present assignment of the expectancy of the renewal and that the defendant is now the sole owner of the copyright as renewed.

On March 21, 1929, the authors entered into an agreement with defendant's predecessor (hereinafter referred to as "the publisher") for the publication of the song, "Miss You." By this agreement the authors sold and assigned to the publisher certain specific rights in that song, including " * * * all copyrights and the rights to secure copyrights and extensions and *renewals* of the copyrights * * * " [Emphasis added.][1]

---

1. The opening paragraph of the March 21, 1929 agreement provided in full as follows, the authors being therein collectively designated as "the composer":

"The COMPOSER hereby sells, assigns, transfers and delivers to the PUBLISH-

ER, its successors and assigns, the original musical composition, written and composed by CHAS. TOBIAS, HARRY TOBIAS and HENRY H. TOBIAS and bearing the title of "MISS YOU" including the title, words and music thereof and

The agreement obligated the publisher to pay royalties to the authors on certain uses of the composition in accordance with a specified schedule of terms.[2]

In this connection, also, the publisher agreed to render semi-annual statements to the authors showing all sales and royalties earned by them and to pay them at the same time all royalties then due and owing.

The publisher proceeded to exploit the song and paid royalties to the authors which amounted, between 1929 and 1957, to $19,359.31.

■ On March 22, 1929, the publisher registered the song with the Copyright Office as an unpublished work and, on June 1, 1929, registered it as a published one. The Rules and Regulations of the Copyright Office state that an application for renewal of copyright upon a work initially registered in unpublished form must be made during the twenty-eighth year of the original copyright term. Hence, it is manifest that the copyright renewal on "Miss You" could have been secured only within the period of one year commencing March 22, 1956. See 17 U.S.C. § 24; Rules and Regulations of Copyright Office, § 202.17 (a), 37 C.F.R., 17 U.S.C.A. following section 207; Rose v. Bourne Music, Inc.,

176 F.Supp. 605 (S.D.N.Y., 1959), aff'd 279 F.2d 79 (2 Cir., 1960), cert. denied, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); Marx v. United States, 96 F.2d 204 (9th Cir., 1938).

At the beginning of such final year of the song's original copyright term, on March 22, 1956, the authors filed an application in the Copyright Office for the renewal and extension of the copyright in "Miss You" as an unpublished work. The Copyright Office registered this application and issued to the authors on that date a registration certificate for their claim to the renewal. On March 30, 1956, the publisher filed a similar application, on its behalf but in the name of the authors (See Rules and Regulations of Copyright Office, § 202.17(b), 37 C.F.R.); this application was duly registered by the Copyright Office, which thereupon issued to the publisher a certificate of registration of claim to renewal, dated March 30, 1956.

The authors, on June 1, 1956, thereafter also caused to be filed and registered in the Copyright Office their application for renewal of the copyright as a published work. The publisher recorded the 1929 agreement in the Copyright Office on December 29, 1954. On April 9, 1956, there was recorded in the

---

all rights therein, and all copyrights and the rights to secure copyrights and extensions and renewals of copyrights in the same and in any arrangements and adaptations thereof, in the United States, Canada, and foreign countries, and all other rights that the COMPOSER now has or may be entitled to or that he hereafter could or might secure with respect to this composition if these presents had not been made, for all countries, including the publishing rights, the performing rights, and the rights to use the same for mechanical reproduction, and the right to make, publish and perform any arrangement or adaptation of the same, and to license others to exercise in foreign countries any and all of the rights hereby conveyed, to have and to hold the same absolutely unto the PUBLISHER, its successors and assigns forever."

2. Thus, in pertinent part, the contract stipulated that the publisher agreed to

pay to the authors the following royalties:

"Three (3¢) Cents for each sheet music copy of piano arrangement of the said composition sold by the PUBLISHER in the United States and Canada at wholesale at or more than eighteen (18¢) cents per copy and actually paid for by the purchaser or purchasers thereof; and Two (2¢) Cents for each sheet music of piano arrangement of the said composition sold by the PUBLISHER in the United States and Canada at wholesale at less than eighteen (18¢) cents per copy and actually paid for by the purchaser or purchasers thereof; together with a sum equal to one-third (⅓) of all moneys received by the PUBLISHER for such copies sold in foreign countries and 33⅓ per cent (33⅓%) of all moneys received by the PUBLISHER from or on account of the use of said composition for mechanical reproduction under the license of the PUBLISHER, * * *"

Copyright Office an instrument executed by the publisher, as attorney in fact for the authors, which assigned all copyright renewal rights in the song to the publisher. This power of attorney, the publisher contends, stemmed from and is based upon the terms of the original instrument of March 21, 1929.

That the 1929 agreement in this case effectively conveyed renewal rights to the publisher-defendant can hardly be doubted. By that agreement, the authors plainly assigned to the publisher certain of their rights in the song, including, among others, all rights to the original copyright and the expectancy in the renewal copyright. Cf. Rose v. Bourne Music, Inc., supra; Rossiter v. Vogel, 134 F.2d 908 (2nd Cir., 1943).

■ It is well settled that prior to the statutory renewal period an author's interest in renewal rights is only an expectancy, which can be defeated in the event of his death before the commencement of that renewal period. Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960); 17 U.S.C. § 24. In this sense the expectancy of the renewal of the copyright is like the interest of one who is entitled to a remainder after a term of years provided he outlives the term. It remains equally clear, however, that the author can effectively assign such an expectancy; and if he is still living at the commencement of the renewal period, the expectancy then vests in his assignee. Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055 (1943). Here, the renewal period began on March 22, 1956; and since it is apparent that all three authors were alive on that date, the right to renewal thereupon vested in the assignee under the terms of the contract.

■ Further, the exercise of the assignee's renewal rights is in no sense contingent upon the assistance of the authors. It is true, of course, that under the statute and the rules of the Copyright Office an application for renewal must be made in the *name* of the author. 17 U.S.C. § 24; 37 C.F.R. 202.17(b).

However, the assignment of the expectancy itself implies a power of attorney in the assignee to apply for such renewal in the author's name. Rose v. Bourne Music, Inc., 176 F.Supp. 605, 610 (S.D. N.Y., 1959), aff'd 279 F.2d 79 (2nd Cir., 1960) cert. denied, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); Rossiter v. Vogel, 134 F.2d 908, 911 (2nd Cir., 1943). Thus, in Rose v. Bourne Music, Inc., the Court of Appeals for this Circuit explicitly noted that it has "repeatedly held that a power of attorney to apply for renewal rights will be implied from the fact of the assignment." (279 F.2d 79, 81).

■ The assignee's use of the authors' names was, therefore, entirely proper, and it manifestly cannot be regarded as depriving the assignee of any renewal rights.

■ The authors' contention that they became the owners of the copyright as renewed by reason of their registration on March 22, 1956 of renewal applications made out in their own names, is specious. While the authors, indeed, renewed the copyright by their registration of these applications, the ownership of the renewal copyright was in no sense determined thereby and remained in the defendant-assignee.

■ It may also be noted that although the assignee of the expectancy of the renewal of a copyright can, under Section 30 of the Copyright Act (17 U. S.C. § 30), record his assignment (Rossiter v. Vogel, supra) that recordation would not create a legal ownership that did not exist already. If made within the prescribed period, it would simply serve to protect the recording assignee against a *bona fide* purchaser.

■ Upon the trial, plaintiffs challenged the validity of the assignment of their expectancy in the renewal rights on the ground that the consideration for such assignment was inadequate. See Rossiter v. Vogel, 148 F.2d 292 (2nd Cir., 1945). With respect to this issue, the publisher assumed the burden of showing that the consideration was not in-

adequate, and proceeded to introduce evidence that the terms of the instrument of March 21, 1929 were quite usual in the music business at that time. Plaintiffs never successfully controverted this showing; instead they sought to show that the consideration had subsequently become inadequate as a result of changes in the business which were uncontemplated at the time of the original bargain. Essentially, these changes related to certain higher standard royalties which came to be used in the business only many years after the parties had entered into their March 21, 1929 agreement. As this court noted in Rose v. Bourne Music, Inc., supra, however, inadequacy of consideration which results from a subsequent event does not render the transaction voidable if the consideration was adequate at the time of the transfer. (176 F.Supp. 605, 611). Even assuming subsequent inadequacy, plaintiffs therefore are not properly within the special rule for holders of expectancies. Ibid.; see, also, Pomeroy, Equity Jurisprudence (5th ed., 1941) § 953a, p. 784, footnote 11.

Further, in the case at bar, the publisher proved that it had exploited the song for twenty-eight years and had paid the authors royalties totaling $19,359.31. The 1929 agreement calls for royalties on both domestic and foreign sales, and the record discloses that payments for both such types of sales have been made.

It is evident that the authors' assignment of the renewal and other interests in the song, in consideration of the publisher's promise to pay the specified royalties, constituted a valid bilateral contract which created mutually enforceable rights and duties. See Gumm v. Jerry Vogel Music Co., 158 F.2d 516 (2nd Cir., 1946); Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co., 255 F.2d 518, 521–522 (2nd Cir. 1958), cert. denied 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958). The defendant, having exercised its rights by making timely filing for renewal, is therefore the present legal owner of the renewal copyright.

Defendant asks leave to apply on affidavits for an allowance of attorneys' fees pursuant to 17 U.S.C. § 116. In view of the clear and settled nature of the authorities governing the issues, reasonable counsel fees will be allowed.

In this action, defendant is entitled to judgment declaring it to be the legal owner of the copyright as renewed, with costs.

The court has made certain findings of fact and conclusions of law at the request of defendant, and this opinion is intended to embody supplementary ones.

Settle order on notice.