**FREDERICK MUSIC COMPANY, Plaintiff,**

v.

**Don SICKLER d/b/a Second Floor Music; joining Adam R. Levy, as an indispensable party, Defendants.**

**No. 88 Civ. 5169 (JMW).**

United States District Court,
S.D. New York.

March 16, 1989.

Alan Shulman, Silverman, Shulman & Slotnick, P.C., New York City, for plaintiff.

Joseph Taubman, Feig & Taubman, New York City, for defendants.

## OPINION AND ORDER

WALKER, District Judge:

This action arises out of a dispute between plaintiff Frederick Music Company ("Frederick Music") and defendant Don Sickler, d/b/a Second Floor Music ("SFM"), concerning ownership of the renewal copyright interest in the song "Night Train." Frederick Music alleges that it rightfully obtained ownership of such copyright interests as an assignee of Jimmy Forrest ("Forrest"), one of the co-authors of that composition. Frederick Music seeks an accounting from SFM of all monies that SFM may have received based on its claim to an interest in "Night Train," derived by an assignment from Forrest's widow, Betty Tardy Forrest.

SFM counter-claims that it is the rightful owner of the renewal rights in issue, and seeks an accounting from Frederick Music of all monies that Frederick Music received after date of assignment to SFM by Betty Tardy Forrest dated July 11, 1987. The facts in this case are not in dispute, and both parties now seek summary judgment. For the reasons stated below, the Court grants summary judgment in favor of plaintiff.

## I. Background

The following is a summary of the stipulated facts:

The musical composition "Night Train" was written and composed by Forrest, with co-authors. Only the copyright renewal interest in the Song attributable to the authorship of Forrest is at issue in this action. The Song was registered with the U.S. Copyright Office on March 11, 1952, as an unpublished work (the First Copyright) and on June 5, 1952 as a published work (the Second Copyright). These copyrights were subject to renewal under § 304(a) of the 1976 Act.

The first day upon which the First Copyright could have been renewed under § 304(a) was March 11, 1979 (the first day of the 28th year of the original copyright term); the last day upon which the First Copyright could have been renewed pursuant to § 305 of the 1976 Act was December 31, 1980. Under the same statutory provisions the first day upon which the Second Copyright could have been renewed was June 5, 1979 (the first day of the 28th year of the original copyright term) and the last day was December 31, 1980.

The First and Second Copyrights were in fact renewed on behalf of Forrest and one of his co-authors on July 31, 1980, and March 19, 1980 respectively, within the time prescribed by §§ 304(a) and 305 of the 1976 Act. Forrest died on August 27, 1980.

By an assignment dated March 3, 1952, Frederick Music became the assignee of all Forrest's rights to the Song, the title, words and music thereof, the right to hold and secure the copyright therein, and any and all renewals of copyright therein to which Forrest may have become entitled. By an assignment dated July 11, 1987, SFM became the assignee of Forrest's widow, Betty Tardy Forrest, of all her rights, title and interest to the renewal copyright in the Song. Neither Forrest's widow nor SFM ever filed any applications for renewal copyright with respect to the Song.

## II. Discussion

The issue before the Court, while straightforward, is also of first impression: whether the right to a renewal copyright vests in the author or his assignee on the date when the copyright is renewed during the statutory period prescribed for renewal and during the author's lifetime, or whether it vests only at the commencement of the renewal term, provided the author survives into that term.[1] If the former is correct, then Frederick Music, as the author's assignee, is the valid copyright owner. If the latter is correct, then Frederick Music was the assignee of an expectancy that never vested since the author died prior to the commencement of the renewal term.[2]

The Court begins its analysis with the language of the statute itself. Section 304(a) of Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, provides:

(a) *Copyrights in Their First Term on January 1, 1978*—Any copyright, the first term of which is subsisting on January 1, 1978, shall endure for twenty-eight (28) years from the date it was originally secured: ... provided ... that in the case of any ... copyrighted work ... the author of such work, if still living ... *shall be entitled* to a renewal and extension of the copyright in such work for a further term of forty-seven (47) years *when application for such renewal and extension shall have been made to the Copyright Office and duly registered therein* within one year prior to the expiration of the original term of Copyright.

(emphasis added). There is no pertinent distinction in language or intention between § 304(a) and its predecessor, § 24 of the 1909 Copyright Act, under which "Night Train" was originally copyrighted.[3]

The language of the statute is clear. If a copyright is renewed by or on behalf of the author during the statutorily provided period, the author becomes "entitled" to the extension of the original copyright. And this entitlement arises "when application for such renewal and extension shall have been made to the Copyright Office and duly registered therein." There is no mention of survivorship in the language of the statute. Thus, the renewal copyright plainly vests in the author or his assignee upon application and registration with the Copyright Office, if the author is still living at the time of such application and registration. To this Court, the language of the statute is unambiguous and thus needs no clarification from legislative history— which is fortunate since, as all sides agree, the legislative history is silent on the issue of when renewal rights vest. P. at 6 and D. at 10.[4] Given this silence, the Court adheres to the plain meaning of the statutory language.

Disregarding the statutory language, SFM bases its claim largely upon a historical analysis of the copyright renewal provision, commencing with the English Statute of Anne, 8 Anne, c. 10 (1710), through various colonial statutes and the Copyright Acts of 1790, 1831, 1870, 1919 and 1976. SFM's "historical approach" as an attempt to locate a survivorship requirement is

---

1. The "renewal period" referred to throughout this opinion is the statutory period under § 304 and § 305 during which renewal may be effected by application to and registration by the Copyright Office. The "renewal term" is the 47 year term that, assuming effective renewal, commences immediately upon the expiration of the original copyright term of 28 years.

2. If the Court were to hold against Frederick Music on the ground that the owner's survival into the renewal term was required in order to vest the renewal copyright in his assignee, it does not automatically follow that SFM, the widow's assignee, would take the copyright. After the owner died, the widow did not file for renewal. If the owner's death terminated the renewal right prior to vesting, as SFM argues, then it is possible that no renewal would be recognized at all and the work would fall into public domain. However, since the Court finds for plaintiff, it need not test defendant's "constructive trust" theory.

3. The latter act extended the renewal term to 47 years and switched to gender neutral terminology.

4. References throughout this Memorandum are to Plaintiff's brief ("P.") Defendant's brief ("D."), and Plaintiff's response ("R.").

largely irrelevant. Most, if not all, of the early copyright laws merely conditioned renewal upon the author's survival past a single threshold point, such as the expiration of the term. They did not embody the concept of the affirmative right to renew during a statutorily created renewal period prior to the commencement of the renewal term. Specifically, while the Acts of 1790 and 1831 included a requirement of survival into the renewal term,[5] the Act of 1870 excluded such language and instead provided for a renewal period of six months during which an author or his widow or children could renew the copyright "upon recording the title of the work ... a second time, and complying with all other regulations in regard to the original copyright ..." Act of July 8, 1870, ch. 230, 16 Stat. 212.[6] Thus, analysis of copyright provisions prior to the Act of 1870 is irrelevant, as it is the affirmative renewal concept of that act—*not* the language of earlier acts—which is substantially carried forward to the present law.

Although courts have not squarely faced the question of when renewal rights vest, they have addressed the issue in dicta. In *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960), Justice Douglas noted that "[a]n assignment by an author of his renewal rights is valid against the world, if the author is alive at the commencement of the renewal period." *Id.* at 375, 80 S.Ct. at 794. Justice Douglas did not define "re-

newal period." SFM argues that "renewal period" is synonymous with renewal term, the second term of the copyright. It is doubtful, however, that Justice Douglas intended this meaning. In *Miller Music* the author had died before application was even possible under the 1909 Act's renewal period and thus it was not necessary for "renewal period" to be defined.[7] The district court in the Miller Music litigation had used "renewal period" to mean the statutory period for exercising the right of renewal, stating that it was the twenty-eighth year, not the twenty-ninth, when the author becomes vested "with an absolute power to renew." *Miller Music v. Charles N. Daniels, Inc.*, 158 F.Supp. 188, 192 (S.D. N.Y.1957).

Dicta from other copyright cases support the view that the renewal copyrights vest upon the statutory exercise of the right of renewal.[8] For example, in reviewing the ownership of renewal rights in a popular song, a court in this district stated that "the title of the assignee is complete and perfect at the instant application in the name of the author is registered." *Rose v. Bourne*, 176 F.Supp. 605, 610 (S.D.N.Y. 1960). Indeed, in *Tobias v. Joy Music, Inc.*, 204 F.Supp. 556 (S.D.N.Y.1962), a court held that vesting could occur if the author survived into the *beginning* of the 28th year, concluding an assignment of copyright renewals to be effective where all authors were alive on 27th anniversary of registration. *Id.* at 559. *See also Capano Music, Div. of Britone v. Myers Music,*

---

5. Kupferman, *Renewal of Copyright,* 44 Colum. L.Rev. 712, 733 (1944). *See also Fred Fisher Music Co. v. M. Witmark and Sons,* 318 U.S. 643, 651, 63 S.Ct. 773, 776, 87 L.Ed. 1055 (1943).

6. *See* Schrader, *Vesting Date of Renewal Copyright Interest,* 19 Bull. of the Copyright Society 277, 283–284 (1972).

7. The issue in that case which the Court answered in the negative, was whether a deceased author's assignee of the right of renewal could prevail against the executor who did exercise the right of renewal during the renewal period.

8. *See Rossiter v. Vogel,* 134 F.2d 908, 911 (2d Cir.1943), *after remand,* 148 F.2d 292 (2d Cir. 1945); *Picture Music v. Bourne, Inc.,* 314 F.Supp. 640, 644 (S.D.N.Y.1970), *aff'd,* 457 F.2d 1213 (2d Cir.1972), *cert. denied,* 409 U.S. 997, 93 S.Ct.

320, 34 L.Ed.2d 262 (1972); *Davis v. DuPont de Nemours & Co.,* 240 F.Supp. 612, 626 (S.D.N.Y. 1965); *Cresci v. Music Publishers Holding Corp.,* 210 F.Supp. 253, 257 (S.D.N.Y.1962); *Tobias v. Joy Music, Inc.,* 204 F.Supp. 556 (S.D.N.Y.1962); *Rose v. Bourne, Inc.,* 176 F.Supp. 605, 610 (S.D. N.Y.1959) *aff'd,* 279 F.2d 79, 80 (2d Cir.1960), *cert. denied,* 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); *Carmichael v. Mills Music,* 121 F.Supp. 43, 45 (S.D.N.Y.1954); *Tobani v. Carl Fischer, Inc.,* 263 App.Div. 503, 504, 33 N.Y.S.2d 294, 296, *aff'd on other grounds,* 289 N.Y. 727, 46 N.E.2d 347 (1942). *See also* 2 ALR 3d 1403, 1412 (1988) ("It is well established that an author's assignment of his renewal expectancy is rendered ineffective by his death prior to the beginning of the renewal period, that is, the year immediately preceding the date on which the original copyright expires.")

605 F.Supp. 692, 695 (S.D.N.Y.1985).[9]

The only case in this Circuit to interpret "renewal period" to mean the copyright renewal term is a Tax Court case, *Arlen v. Commissioner of Internal Revenue*, 48 T.C. 640, 155 U.S.P.Q. 665 (1967). There the court assumed a survival requirement through the expiration of the first term in order to vest the renewal in a particular statutory class. *Id.* 48 T.C. at 646, 155 U.S.P.Q. at 667. That case, however, is inapposite. The issue of when renewal rights vest was irrelevant to that decision, and the case involved tax, not copyright considerations.

In addition to significant judicial dicta, several commentators provide support for the position that renewal rights vest upon timely application and registration. For example, Judge Kupferman writes:

> [S]urvival until the end of the basic term is unnecessary and ... once vested, the renewal term cannot be divested by the death of the applicant. This interpretation is only fair; adoption of the alternative view would mean that any action taken with regard to application and registration of the renewal would have been for naught if the applicant died before the end of the twenty-eighth year. Someone else would become entitled and would have to take necessary steps with possibly little time remaining to do so. Furthermore, the alternative view would cause uncertainty as to ownership and thus constitute a further burden on modern commercial bargaining processes.

Kupferman, *Renewal of Copyright, Sec. 23 of the Copyright Act of 1909*, 44 Colum.L. Rev. 712 at 733–34 (1944).

Another commentator, Barbara Ringer, states that while the matter is not com-pletely free from doubt, the following conclusions can be made:

(1) Before the twenty-eighth year, any person's interest in a renewal is wholly contingent and incapable of being presently vested.

(2) During the twenty-eighth year, before a claim has been registered, the interest of the persons entitled to claim (or of their assignees) is still contingent or inchoate, but is now capable of being presently vested. However, should the person entitled to claim die before his application is submitted, the rights of his heirs, legatees, or assignees are cut off, and the members of the next statutory class become entitled to claim.

(3) As soon as a valid renewal claim is registered, the renewal is "vested in interest"—that is, there is a "present fixed right of future enjoyment."

(a) At this point the rights of the group entitled to claim are determined and indefeasible, and the contingent rights of the other statutory classes are cut off and destroyed. The death, during the renewal year, of the registered claimant or of any other entitled to claim, will not affect the validity of the renewal, the rights of the other members of the class, the rights of the assignees, or the rights of his own heirs or legatees ...

(4) At the beginning of the renewal term itself, the renewal copyright becomes "vested in possession"—that is, a right of present enjoyment comes into existence.

Ringer, *Renewal of Copyright*, 1 Studies on Copyright (Arthur Fisher Memorial Edition) 503, 581–82 (1960).

Similarly, Dorothy Schrader clearly defines "renewal period" as "the twenty-

---

9. In *Capano Music*, the widow of one of the authors assigned her rights in a song to Capano Music during the first term of copyright. The widow died prior to the last year of the original term. As a result, the court did not have to address the vesting issue present in this case, as the result would have been the same under either interpretation of "renewal period." The court noted, however, that the renewal period commenced on January 1, 1981—the beginning of the last year of the original term. 605 F.Supp. at 695. Similarly, in *Davis v. DuPont de Nemours & Co.*, the court again interpreted "renewal period" to mean "the last year of the initial copyright term." 240 F.Supp. 612, 626 (S.D.N.Y.1965). And in *Picture Music v. Bourne, Inc.*, the court stated that "[i]f the author lives into the twenty-eighth year of the original period, the renewal copyright, a distinct and separate estate from the original term, vests in him." 314 F.Supp. 640, 644 (S.D.N.Y.1970).

eighth year itself," and states explicitly that "renewal interest vests upon timely application to the Copyright Office by the proper statutory claimant. The subsequent death of that claimant does not affect the renewal interest." D. Schrader, *Vesting Date of the Renewal Copyright Interest*, 19 Bull. of the Copyright Society 277, 280 (1972).[10]

SFM cites Professor Nimmer, who, while more favorable to SFM's position, does not provide strong support for it. Nimmer concludes that in *Miller Music* the Supreme Court equated the phrase "renewal period" with "renewal term." Nevertheless, Nimmer acknowledges that "renewal period" is not defined in *Miller* and that at least one subsequent decision (*Rose v. Bourne*, 176 F.Supp. 605 (S.D.N.Y.1960)) has interpreted the phrase to mean "the last year of the original term of copyright." 2 *Nimmer*, Sec 9.05(C) at pp. 9–60–61. As noted above, several commentators have disagreed with Nimmer's interpretation of the *Miller* case, taking the view that in fact "*Miller* affirmatively supports vesting on the day of renewal registration." *Schrader* at 296–97. Upon close scrutiny of *Miller* and its progeny, as well as the statute itself, this Court also disagrees with Nimmer's conclusion.

The plain meaning of the language of the statute, the weight of commentators' analysis, and significant dicta in this circuit compel this Court to conclude that renewal rights vest upon registration for renewal during the author's lifetime and within the statutorily prescribed renewal period. In this case both copyrights were renewed within the prescribed renewal period and before the author died. The Court therefore grants summary judgment to the author's assignee, Frederick Music, and accordingly orders an accounting as requested. In light of the Court's conclusion, it need not consider further questions raised by plaintiff as to whether defendant is barred by laches.

**10.** *See similarly,* Bricker, *Renewal and Extension of Copyright*, 29 So.Calif.L.Rev. 23, 26 (1955) ("If a timely application is made, the

### III. Conclusion

For the reasons stated above, Frederick Music's motion for summary judgment and for an accounting is granted and SFM's cross-motion for summary judgment is denied.

SO ORDERED.

death of the applicant prior to the beginning of the renewal term will not defeat the rights of his ... assignees.")