**John MARASCALCO, d/b/a Robin Hood Music, Plaintiff–Appellee,**

**v.**

**FANTASY, INC., d/b/a Jondora/Parker Music, Defendant–Appellant.**

**No. 90–56372.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided Dec. 30, 1991.

Norman G. Rudman, Slaff, Mosk & Rudman, Los Angeles, Cal., for defendant-appellant.

Evan S. Cohen, Cohen and Luckenbacher, Los Angeles, Cal., for plaintiff-appellee.

Before FARRIS, PREGERSON and THOMPSON, Circuit Judges.

FARRIS, Circuit Judge:

Fantasy, Inc., appeals from a judgment in favor of John Marascalco on his claim for a declaration of rights in a renewed copyright. The district court held that Fantasy's interest, acquired in an assignment of a copyright renewal and registered pursuant to § 304(a) of the Copyright Act of 1976, failed to vest before the assignor's death. We affirm.

I

The facts are undisputed. John Marascalco and Robert Blackwell jointly authored the song "Good Golly Miss Molly" in 1956. By an agreement dated July 23, 1956, Marascalco and Blackwell assigned ownership of the song to Venice Music, Inc., in exchange for royalties. This agreement transferred both the copyright and renewal right in the song to Venice. Venice copyrighted the song on January 22, 1957.

On or about March 31, 1973, Venice assigned all of its rights in the song to Argosy Venture, a Bahamian partnership. On

or about January 1, 1981, Argosy assigned those rights to Fantasy.

On January 18, 1985, Marascalco made a timely renewal registration for the song with the Register of Copyrights on behalf of himself and Blackwell. On March 9, 1985, Blackwell died. Blackwell's daughters, Sandra Blackwell McClendon and Kelly Blackwell, were his successors under § 304(a) of the Copyright Act of 1976.

On March 15, 1986, Blackwell's daughters assigned all of their interest in the song to Marascalco in exchange for future royalties. On or about November 20, 1986, Marascalco notified Fantasy that he claimed the renewal interest in that one-half of the song's royalties traceable to Blackwell's authorship. Fantasy rejected Marascalco's claim, and this suit followed.

Marascalco is entitled to royalties under the 1956 agreement. He does not challenge Fantasy's right to ownership of that one-half of the copyright attributable to his authorship. His claim of ownership derives only from the other half of the copyright, traceable to Blackwell's authorship.

## II

The issue on appeal involves a pure question of law, which we review *de novo. See, e.g., Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 811 (9th Cir.1991); *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III

 The district court held that, notwithstanding timely registration of the renewed copyright, the renewal right, assigned by Blackwell under the 1956 agreement, was a mere expectancy pending a determination of whether Blackwell would survive to the beginning of the renewal term. Because Blackwell did not survive until the start of the renewal term, January 1, 1986, the district court held that the renewal right did not vest in Fantasy, as Blackwell's ultimate assignee. Fantasy, relying upon (a) the plain language of the Copyright Code, (b) its legislative history,

(c) its administrative treatment, (d) case law and (e) policy, contends that this was error.

### A

*The Statutory Language*—17 U.S.C. § 304(a) (1988) provides:

Any copyright, the first term of which is subsisting on January 1, 1978, shall endure for twenty-eight years from the date it was originally secured.... *And provided further,* ... the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors ... shall be entitled to a renewal and extension of the copyright in such work for a further term of forty-seven years when application for such renewal and extension shall have been made to the Copyright Office and duly registered therein within one year prior to the expiration of the original term of copyright....

Fantasy argues that the plain meaning of "shall be entitled" can only signify a Congressional determination that an assigned renewal copyright interest should vest "when" a registration application is made. Fantasy's analysis suggests that registration is a *sufficient* condition for vesting, but it overlooks certain implications of the language.

The "shall be entitled"/"when" language of § 304(a) can be fairly read as describing merely a *necessary* condition. If a renewal interest is to vest at all, it must be perfected by a timely registration application. The clause following "when" addresses itself to the mechanics of filing a timely registration application. So read, the statute suggests that Congress was intent on specifying the time for registration and not the time for vesting.

Moreover, the statutory language must be construed as a whole. The phrase "shall have been made" gives meaning to the word "when." It signifies that filing of a renewal application is a condition precedent to vesting. If, in addition, "when" was intended to indicate vesting of

renewal rights, the logical phrasing would be "when application *is made*" rather than "shall have been made."

Subsection 304(b) provides that "[t]he duration of any copyright ... for which renewal registration is made between December 31, 1976, and December 31, 1977, inclusive, is extended to endure for a term of seventy-five years from the date copyright was originally secured." Fantasy argues that, under this provision, it is the act of registration, without more, which secures the extension and that, by analogy, the same is true under § 304(a).

Fantasy recognizes that § 304(b) was intended to cover "the special situation of a subsisting first-term copyright that becomes eligible for renewal registration during the year before the [Copyright Act of 1976] comes into effect." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 140 (1976), *reprinted in* U.S.Code Cong. & Admin.News 1976, pp. 5659, 5756. Fantasy fails to recognize, however, that the solution Congress devised for that special situation effectively avoided the time-of-vesting issue by treating the copyright "as if it were *already subsisting in its second term.*" *Id.* (emphasis added). Because § 304(b) skirts the time-of-vesting issue entirely, it lends no support to Fantasy's analysis.

Since the statutory language is susceptible to more than one interpretation, Fantasy's plain meaning analysis fails.

**B**

*The Legislative History*—Although commentators disagree, the better view is that § 304(a) implicitly reflects the vesting language of earlier statutes, requiring an author to survive to the start of the renewal term in order for the renewal copyright interest to vest in his assignees.

The renewal provision of the Copyright Act of 1976 has antecedents reaching back to the colonial era. *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 647, 63 S.Ct. 773, 774, 87 L.Ed. 1055 (1943). The Statute of 8 Anne c. 19, which formed the basis for American copyright law, did not expressly provide that an author could assign his renewal interest during the original term. *Id.* But English courts glossed the statute to hold that the author's right of renewal, although contingent on his survival to the start of the renewal term, could be assigned during the original term. *Id.* at 647–48, 63 S.Ct. at 774–75.

The first Congress, by the Act of May 31, 1790,[1] enacted copyright legislation that reflected its statutory forebears. *Id.* at 650, 63 S.Ct. at 776. It also required, at § 1, that an author survive to the beginning of the renewal term in order for anyone to continue to enjoy "the same exclusive right" enjoyed during the original term. *Id.*

The Act of February 3, 1831,[2] maintained the explicit vesting language of the 1790 Act. It amended the 1790 Act in one sig-

---

**1.** The text of the renewal provision is as follows:
And if, at the expiration of the said term, the author or authors, or any of them, be living, and a citizen or citizens of these United States, or resident therein, the same exclusive right shall be continued to him or them, his or their executors, administrators or assigns, for the further term of fourteen years: *Provided,* he or they shall cause the title thereof to be a second time recorded and published in the same manner as is herein after directed, and that within six months before the expiration of the first term of fourteen years aforesaid.
Act of May 31, 1790, ch. 15, § 1, 1 Stat. 124, 124.

**2.** The full text of the renewal provision reads as follows:
*And be it further enacted,* That if, at the expiration of the aforesaid term of years, such author, inventor, designer, engraver, or any of them, where the work had been originally composed and made by more than one person, be still living, and a citizen or citizens of the United States, or resident therein, or being dead, shall have left a widow, or child, or children, either or all then living, the same exclusive right shall be continued to such author, designer, or engraver, or, if dead, then to such widow and child, or children, for the further term of fourteen years: *Provided,* That the title of the work so secured shall be a second time recorded, and all such other regulations as are herein required in regard to original copyrights, be complied with in respect to such renewed copyright, and that within six months before expiration of the first term.
Act of February 3, 1831, ch. 16, § 2, 4 Stat. 436, 436–37.

nificant respect by providing in section 2 that "the renewal term ... could pass to the author's widow or children if he did not survive the original term." *Id.* The House Committee on the Judiciary noted, in reference to this change, that "by the very event of the death of the author, his family stand in more need of the only means of subsistence ordinarily left to them." *Id.* at 651, 63 S.Ct. at 776 (quoting Register of Debates, vol. 7, app. CXIX).

The Act of July 8, 1870,[3] unlike its predecessors, only required the author to survive, without expressly requiring that he must be alive at the beginning of the renewal term. The Act of March 4, 1909,[4] as well as its successor, the provision presently in effect, have carried forward the approach of the 1870 Act, requiring survival without specifying survival to a specific time to ensure vesting.

The significance of the 1870 alteration is critical. If, as Professor Nimmer argued, there is no indication of an intent to depart from earlier copyright law, then the legislative history leans toward the position that an author must survive until the start of the renewal term in order for his assignees to claim a vested interest through him. *See* M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright* § 9.05[C] at 9–60 (1991). Barbara Ringer, one of the chief authorities on which Fantasy relies, stated that the 1870 Act retained the renewal provisions of the 1831 Act without substantial change, and she noted that "in the fragmentary history there is no indication that any change was considered or even suggested." B. Ringer, Renewal of Copyright (1960), *reprinted as* Copyright Law Revision Study No. 31, Sen. Judiciary Comm., 86th Cong., 2d Sess. 105, 111–12 (1961) (citing *De Sylva v. Ballentine*, 351 U.S. 570, 576, 76 S.Ct. 974, 977, 100 L.Ed. 1415 (1956) ("[W]hat scant material there is indicates that no substantial changes in the Act were intended.")); *see also* Cong.Globe, 41st Cong., 2d Sess. 2854 (1870) (statement of Mr. Jenckes) ("The committee ... have carefully preserved every existing right [contained in extant copyright law]....").

If, on the other hand, the 1870 Act represents a fundamental shift in the Congressional conception of the time-of-vesting issue, as Judge Kupferman argued, then the legislative history inclines toward the view that "survival until the end of the basic term is unnecessary" in order to vest the renewal interest in the author's assignees. *See* Note, Renewal of Copyright, 44 Colum.L.Rev. 712, 733–34 (1944); *see also* S. Bricker, Renewal and Extension of Copyright, 29 S.Cal.L.Rev. 23, 26 (1955); D. Schrader, Vesting Date of the Renewal Copyright Interest, 19 Bull. Copyright Soc'y U.S.A. 279, 282–84 (1972). Judge

---

**3.** The full text of the renewal provision states: *And be it further enacted,* That the author, inventor, or designer, if he be still living, and a citizen of the United States or resident therein, or his widow or children, if he be dead, shall have the same exclusive right continued for the further term of fourteen years, upon recording the title of the work or description of the article so secured a second time, and complying with all other regulations in regard to original copyrights, within six months before the expiration of the first term. And such person shall, within two months from the date of said renewal, cause a copy of the record thereof to be published in one or more newspapers, printed in the United States, for the space of four weeks.
Act of July, 8, 1870, ch. 230, § 88, 16 Stat. 198, 212–13.

**4.** The full text of the renewal provision is as follows:
That the copyright subsisting in any work at the time when this Act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period such that the entire term shall be equal to that secured by this Act, including the renewal period: *Provided, however,* That if the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privilege of renewal and extension granted under this section: *Provided,* That application for such renewal and extension shall be made to the copyright office and duly registered therein within one year prior to the expiration of the existing term.
Act of March 4, 1909, ch. 320, § 24, 35 Stat. 1075, 1080–81 (formerly § 23).

Kupferman's analysis, however, is less authoritative in our view because it makes no reference, beyond the fact of the textual change, to the legislative history of the renewal provision. *Id.*

The conclusion that the 1870 Act did not effect a fundamental change finds support in the legislative history of the 1909 Act: "The right of renewal is contingent. It does not vest until the end [of the original term]. If [the author] is alive at the time of renewal, then the original contract may pass it, but his widow or children would not be bound by that contract." 5 Legislative History of the 1909 Copyright Act, part K, 77 (E. Brylawski & A. Goldman eds.1976) (statement of Mr. Hale) (*quoted in Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 1759, 109 L.Ed.2d 184 (1990) (bracketed material included)). This language suggests that the 60th Congress looked past the 1870 Act to the earlier acts in order to clarify the time-of-vesting issue.

Despite her perception that the 1870 Act did not fundamentally alter earlier renewal law, Ringer contended that "[a]s soon as a valid renewal claim is registered, the renewal is 'vested in interest' [creating] a 'present fixed right of future enjoyment.'" Ringer at 186. Fantasy contends that this interpretation of the 1909 Act, brought to the attention of Congress, must control the interpretation of the 1976 Act, which perpetuated the language and substance of its predecessor. We reject this contention. The primary difficulty with this argument is that the Ringer study was presented to the 86th Congress, not to the 94th Congress, which passed the 1976 Act some sixteen years later. The legislative history, moreover, evinces no explicit approval of Ringer's time-of-vesting analysis.

The legislative history supports an interpretation of § 304(a) that perpetuates the explicit survival requirements of the 1790 and 1831 Acts. We find nothing to buttress a conclusion to the contrary.

### C

*Administrative Treatment*—Fantasy contends that the interpretation embodied in the regulations of the Register of Copyrights, as an agency charged with the administration and enforcement of the copyright laws, is entitled to deference. Marascalco replies that the Register is not an agency for these purposes and that it has not expressly adopted any conclusions as to the time-of-vesting issue.

■ We agree that courts should generally defer to the Register's interpretation of the copyright statute. In relying upon *Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1416 n. 15 (D.C.Cir.1985), which held that the Library of Congress (whose Librarian oversees the Register) is not an agency whose statutory interpretations are entitled to deference, Marascalco overlooks the fact that the Library of Congress is a separate and distinct office from that of the Register. 39 Op. Att'y Gen. 429 (1940). We do not ignore the Second Circuit's statement that the Register's interpretation of an issue of first impression should not be given controlling weight, *Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 946–47 (2d Cir.1975), but this position has been criticized as unsupported dictum. *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.,* 836 F.2d 599, 609–10 & n. 16 (D.C.Cir.1988). *Cf. De Sylva,* 351 U.S. at 577–78, 76 S.Ct. at 978 ("we ... ordinarily give weight to the interpretation of an ambiguous statute by the agency [referring to the Register] charged with its administration"). We agree with the D.C. Circuit that the Register has the authority to interpret the copyright laws and that its interpretations are entitled to judicial deference if reasonable. *Cablevision,* 836 F.2d at 607–10.

While we accept Fantasy's basic premise, the Register has *not* expressed an opinion on the time-of-vesting issue. Fantasy points to the fact that an Assistant Chief of the Examining Division of the Copyright Office declared it to be the practice of the Register not to accept renewal claims on behalf of § 304(a) successors (for example, the author's widow) if the author is still alive. *See* 37 C.F.R. § 202.17(f)(iii). This declaration is not inconsistent with Marascalco's view of the time-of-vesting issue.

Fantasy cites no time-of-vesting regulation promulgated by the Register, and none appears from a perusal of the Register's regulations at 37 C.F.R. §§ 201.1 *et seq.* There is no authoritative agency interpretation of the § 304(a) time-of-vesting issue to which deference is due.

### D

*The Case Law*—For this appeal, the most significant decision is *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 657, 63 S.Ct. 773, 779, 87 L.Ed. 1055 (1943). The Court held, under the 1909 Act, that an author could assign his interest in the renewal copyright before he has secured it by registration. It made an historical overview of American copyright law, concluding that the renewal provisions of the 1909 Act were intended to carry forward the law as it formerly stood with respect to assignment. *Id.* at 647–56, 63 S.Ct. at 774–78.

The Court mentioned the basic policy underlying the renewal provision:

If the author's copyright extended over a single, longer term, his sale of the "copyright" would terminate his entire interest....

"... It not infrequently happens that the author sells his copyright outright to a publisher for a small sum. If the work proves to be a great success and lives beyond the term of twenty-eight years [the original copyright term], ... it should be the exclusive right of the author to take the renewal term...."

*Id.* at 654, 63 S.Ct. at 778 (quoting H.R.Rep. No. 2222, 60th Cong., 2d Sess., 14–15 (1909)). This passage evinces a legislative concern to endow the author and his statutory successors with a second chance to realize economic benefit from the creation of a successful work. The legislative history of the 1976 Act echoes this concern when it describes the renewal term as "a completely new property right" from which an author and his dependents should have a chance to benefit. H.R.Rep. No. 1476, 94th Cong., 2d Sess., 140 (1976), *reprinted in* U.S.Code Cong. & Admin.News 1976, pp. 5659, 5756.

In *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960), the Court considered whether statutory renewal rights under the 1909 Act accrued to an author's executor in spite of the author's prior assignment of the renewal interest. The Court held for the executor, *id.* at 377–78, 80 S.Ct. at 795–96, but ambiguous dictum has caused some confusion:

[W]here the author dies ... prior to the renewal period ..., [the next statutory successor] obtain[s] the renewal copyright free of any claim founded upon an assignment made by the author in his lifetime. These results follow not because the author's assignment is invalid but because he had only an expectancy to assign; and his death, prior to the renewal period, terminates his interest in the renewal which by § 24 vests in the named classes [of statutory successors].

*Id.* at 375, 80 S.Ct. at 794 (citation omitted). Courts and commentators have disagreed whether "renewal period" signifies the term of the renewal copyright or the year preceding the renewal term, during which the renewal copyright is secured by registration. *Compare Abend v. MCA, Inc.*, 863 F.2d 1465, 1475 (9th Cir.1988) (year preceding renewal term); *Rose v. Bourne*, 279 F.2d 79, 80 (2d Cir.1960) (same), *with* Nimmer, § 9.05[C] at 9–61 (renewal term). In any event, *Miller* and *Abend* are consistent with both interpretations since the author in each case died before time for renewal registration. *Abend*, 863 F.2d at 1467; *Miller Music Corp. v. Charles N. Daniels, Inc.*, 158 F.Supp. 188, 190 (S.D.N.Y.1957). In *Rose*, the author died in the last year of the original copyright term, 279 F.2d at 80, but that case was concerned with the validity of an assignment, and not with the time of vesting of a registered renewal copyright. *Id.*

In *Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750, 1758–59, 109 L.Ed.2d 184 (1990), the Court revisited the extensive history of American copyright law. It again referred to the policy of the renewal provision which (1) affords authors a second opportunity to obtain remuneration for their works and (2) provides their statutory successors with a

"new estate" if they die before the "renewal period" arrives. *Id.* 110 S.Ct. at 1758, 1759–60. The Court noted that it had no occasion to address the time-of-vesting issue. *Id.* at 1759 n. 2.

Only two courts have squarely ruled whether an author must survive to the start of the renewal term for his renewal interest to vest in his assignees. *Frederick Music Co. v. Sickler*, 708 F.Supp. 587, 592 (S.D.N.Y.1989) (vesting upon registration); *Arlen v. Comm'r*, 48 T.C. 640, 646–47 (T.C.1967) (vesting contingent on author's survival to start of renewal term).

*Arlen* was decided by a court whose area of special expertise is tax, not copyright, law. Further, *Arlen* reached its conclusion without any discussion of whether another, competing interpretation of "renewal period" might exist. 48 T.C. at 646–47.

*Frederick* rejected the legislative history prior to the 1870 Act as "irrelevant." 708 F.Supp. at 589–90. Its premises for rejection were that (a) the 1790 and 1831 Acts "did not embody the concept of the affirmative right to renew during a statutorily created renewal period prior to the commencement of the renewal term" and (b) the 1870 Act, by dropping the language of the previous statute requiring an author to survive to the start of the renewal term, effected a fundamental change in the law of copyright renewal. *Id.* at 590.

We reject premise (a) because both the 1790 and the 1831 Acts *did* provide for registration of a renewal copyright during a statutorily-created period before the start of the renewal term. Section 1 of the 1790 Act required that a renewal interest be registered "within six months before the expiration of the first term of fourteen years...." Section 2 of the 1831 Act required that "regulations ... be complied with ... within six months before expiration of the original term."

Premise (b) ignores the fact that the 1870 Act was not intended to effect substantial changes in prior copyright law.

E

*Policy Considerations*—The legislative history and the cases reflect that the core concern of § 304(a) is to provide the author and his statutory successors with a new opportunity to enjoy the benefits of a creative work that proves successful.

Congress and the courts have noted the usual practice: the author assigns his original and renewal copyright interests shortly after a work has been created. *See, e.g., Stewart v. Abend*, 110 S.Ct. at 1759 ("It not infrequently happens that the author sells his copyright outright to a publisher....") (quoting H.R.Rep. No. 2222, 60th Cong., 2d Sess., 14 (1909)). *See also* R. Gorman, *Copyright Law* 39 (1991) ("It became common under the 1909 Act for a transferee of copyright to negotiate with an author for the ownership of both the initial and the renewal terms of copyright."). At the time these assignments are made, there is little to indicate how successful the work will be in the marketplace. *Stewart*, 110 S.Ct. at 1759.

Fantasy argues that vesting-on-registration satisfies the statute's policy goals and minimizes the conflict between that policy and the policy favoring author primacy. If, however, an author is deceased, the policy favoring author primacy pales, and the second chance policy of § 304(a), favoring the author's successors, comes to the fore.

The reading of § 304(a) we adopt does not engender an "unlimited" second chance policy at the expense of other policies embodied in our copyright law, as Fantasy argues. If an author survives to the start of the renewal term, the interest of his assignees vests, and the second chance policy falls away.

Fantasy argues that vesting on survival to the start of the renewal term is contrary to the interests of the author and his family.[5] This is because no one would pay an

---

**5.** It can be fairly argued that Fantasy's position suffers from the same defect. Fantasy argues that "something" vests on the first day of the period for renewal registration. What vests, it argues, is some kind of property right—although one subject to perfection by application for renewal. At oral argument, Fantasy stated that there is a presumption that an assignee has

author for something he cannot sell, thus preventing him from realizing any benefit from his renewal interest. *See Fred Fisher*, 318 U.S. at 657, 63 S.Ct. at 779. But an author *can* sell his expectancy. The fact that it has not vested does not prevent its alienation.

We have carefully considered other policy arguments raised by Fantasy. For example, Fantasy points out that delayed vesting will affect the coherence of the registration system because those who search the records will be unable to verify the true owner of the unvested renewal interest. Fantasy also contends that there is a potential for injustice because statutory successors, ignorant of the need to reregister a claim when the author dies before vesting, may allow a work to fall into the public domain. These are serious concerns if they reflect an accurate reading of the statute (a question we do not now decide). But they are not enough to disturb the reading that best comports with statutory intent. We hold that § 304(a) permits a renewal interest to vest in an author's assignees only if the author survives to the start of the renewal term. The 1870 Act was not intended to effect any substantive changes in the prior law of copyright renewal. An unbroken line runs from the explicit vesting provisions of the 1790 and 1831 Acts to the 1976 Act.

AFFIRMED.

DAVID R. THOMPSON, Circuit Judge, dissenting:

I respectfully dissent based on the plain language of the statute and the legislative history of the 1870 Copyright Act.

The language of 17 U.S.C. § 304(a) is clear: An author is "entitled to a [renewal term] *when* application for such renewal and extension shall have been made...." (emphasis added). Thus, on its face, the statute provides that renewal rights vest upon the filing of an application for renewal. Unless the legislative history clearly indicates to the contrary, this court should abide by the plain meaning of the statute. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987); *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 856 (9th Cir.1991).

The legislative history is devoid of any detailed discussion concerning the vesting of renewal rights. However, when adopting the 1870 Act, Congress did not retain the language of the 1831 Act which expressly required the author to survive until the beginning of the renewal term. *See* Dorothy M. Schrader, Vesting Date of the Renewal Copyright Interest, 19 Bull. Copyright Soc'y U.S.A. 282, n. 18a, 283–84 (1972) [hereinafter Schrader]. An express requirement of such survivorship has never been reinstated in the statutory language. *Id.* at 284; *see* 17 U.S.C. § 304(a). The deletion is not discussed in the legislative history. Schrader, *supra*, 277, 284. The obvious conclusion is that Congress deleted the language to make it clear that registration vests the renewal rights.

The majority contends that the legislative history of the 1909 Act indicates Congress did not intend to change the substantive law when it adopted the 1870 Act. The majority cites to Professor Nimmer's conclusion that there is "no indication of [a Congressional] intent to depart from [the survivorship requirement]." 2 Melville B. Nimmer & David Nimmer, The Law of Copyright ¶ 9.05[C], at 9–60 (1990). To support his conclusion Nimmer relies upon the Supreme Court's general statement in *Fisher Co. v. Witmark & Sons*, 318 U.S.

an agency relationship with the author under which it can file the registration application in the name of the author. Hence, the assignee could renew the copyright on the first day of the registration period, vesting the renewal rights in itself. A rule holding that vesting occurs on registration would thus have the practical effect of allowing renewal rights to vest on the first day of the registration period—a rule Fantasy claims it does not urge. Such a result runs counter to the policy expressed in *Abend* and

*Stewart.* It would not protect the families of authors who have assigned away their renewal rights before the value of the work is known. In the vast majority of cases, the author and the publisher-assignee do not come to the bargaining table as equals. Allowing the family to have the renewal rights should the author die before commencement of the renewal term permits the family to renegotiate when the value of the work is known and gives them a second chance to receive some of the bounty.

643, 63 S.Ct. 773, 87 L.Ed. 1055 (1942) that the renewal provisions of the 1909 Act were intended by Congress to continue the renewal structure as it existed under prior copyright laws. *Id.* Such reliance is misplaced.

The *Fisher* court based its conclusion on an extensive analysis of the statutory history leading up to the 1909 Act. In particular, the Court relied heavily on language of a House Committee Report stating that the law should be framed "as is the existing law." *Fisher*, 318 U.S. at 654, 63 S.Ct. at 778. This analysis, however, was undertaken for the sole purpose of determining whether an author may assign his renewal expectancy. As a result, the Court did not consider the Act of 1870. It did not need to consider that Act because there was no departure in it from the Act of 1831 on the issue of assignability of the renewal expectancy. Schrader, *supra*, at 297. Thus, the Court never considered Congress' deletion of language requiring survival until commencement of the renewal term. *Id.* As the Supreme Court made clear in *Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750, 1759 n. 2, 109 L.Ed.2d 184 (1990), *Fisher* was silent concerning the time of vesting.

The majority also relies upon a statement made by a publisher, Mr. Hale, during the legislative hearings on the 1909 Act. The Supreme Court quoted this statement in *Stewart*, 110 S.Ct. at 1759. The *Stewart* court included the statement as part of a general discussion involving the effect of an author's death *prior* to the renewal period, an issue long before decided in *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). *Id.* 110 S.Ct. at 1759. Hale's statement was cited as supporting *Miller:*

> The legislative history of the 1909 Act echoes this view: "The right of renewal is contingent. It does not vest until the end [of the original term]. If [the author] is alive at the time of renewal, then the original contract may pass it, but his widow or children or other persons entitled would not be bound by the contract."

*Id.* (quoting 5 Legislative History of the 1909 Act, part K, p. 77 (E. Brylawski & A. Goldman eds. 1976) (statement of Mr. Hale)) (alterations made by the Court).

The passage is misleading for several reasons. The bracketed language "of the original term" was added to the quote by the Supreme Court in *Stewart.* In pertinent part, the actual statement reads: "The right of renewal is contingent. It does not vest until the end." 5 Legislative History of the 1909 Act, part K, p. 77 (E. Brylawski & A. Goldman eds. 1976) (statement of Mr. Hale). Nowhere in his statement does Mr. Hale define "end."

Hale made the statement before a joint Senate and House committee which was considering various proposals for revising the copyright laws. He was arguing that composite works should be exempted from the renewal provisions. *Id.* at 76–78. He was not addressing the issue of when renewal rights vest. In fact, there is not a single discussion concerning the vesting of renewal rights anywhere in the legislative history of the 1909 Act.

Further, in a footnote to the passage, the Supreme Court in *Stewart* expressly stated it had never "decided the question of when renewal rights vest" and that it had "no occasion to address the issue here." 110 S.Ct. at 1759 n. 2. In light of the above considerations, Mr. Hale's statement is of little value.

Finally, the majority relies upon Ringer's broad statement that "there is no indication that any change was considered or even suggested" by the drafters of the 1870 Act. This statement is part of Ringer's one-sentence discussion of the 1870 Act. Barbara A. Ringer, Renewal of Copyright (1960), reprinted as Copyright Law Revision Study No. 31, prepared for the Senate Committee on the Judiciary, 86th Cong., 2d Sess., 105, 111–12 (1961) [hereinafter Ringer]. Ringer does not discuss the deletion of the language requiring survivorship until the renewal term. In any event, as the majority concedes, Ringer concludes that vesting occurs upon application for renewal. *Id.* at 186 ("[a]s soon as a valid renewal claim is registered, the renewal is 'vested in interest'—that is, there is a 'present fixed right of future enjoyment.'")

The fact of the matter is that the majority of commentators who have directly addressed the time of vesting issue support the view that renewal rights vest upon timely application for renewal. *See Frederick Music,* 708 F.Supp. at 591–92 (comparison of commentators); *see also* Seymour M. Bricker, Renewal and Extension of Copyright, 29 U.S.C.L.Rev. 23, 26 (1955). The two most comprehensive studies both reach this conclusion. Ringer, *supra,* at 186; Schrader, *supra,* at 302–05.

Because no persuasive legislative history exists to the contrary, we should follow the plain meaning of section 304(a). On its face, the statute provides for the vesting of renewal rights upon the proper filing of an application for renewal. I think the statute means what it says. I would leave to Congress the decision whether to amend it.