Tollie **CARTER, individually and as administrator of the Estate of Calvin Carter, the Estate of James Bracken and the Estate of Vivian Bracken, Calvin Carter, Jr., Conrad Publishing Co., Inc., Tollie Music Inc., Gladstone Publishing Corp., and Costoma Music Publishing, Plaintiffs,**

v.

The **GOODMAN GROUP MUSIC PUBLISHERS, Arc Music Corp., Gene Goodman, Philip Chess and Sunflower Music, Inc., Defendants.**

No. 92 Civ. 2284 (JSM).

United States District Court, S.D. New York.

March 15, 1994.

Leon Borstein, Borstein, Sheinbaum & Lurie, New York City, for plaintiffs.

Stewart L. Levy, Eisenberg Tanchum & Levy, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Tollie Carter and Calvin Carter, Jr., the individual plaintiffs in this action, are the sons of Calvin Carter, Sr. ("Carter Sr.") and the nephews of James Bracken ("Bracken"). Carter Sr. and Bracken were composers who died in 1986 and 1972, respectively. The other plaintiffs are music publishing companies previously owned by either Carter Sr. or Bracken. Defendants Sunflower Music, Inc. ("Sunflower") and Arc Music Corp. ("Arc") are music publishing companies owned by the individual defendants Gene Goodman and Phillip Chess. The two defendants' companies are known together as the Goodman Group Music Publishers.

### FACTS

This case arises out of certain music publishing, purchase and loan agreements between Carter Sr., Bracken and defendants made during the late 1960's and 1970's. In 1965, defendants purchased the publishing catalogues of Tollie Music, Inc. ("Tollie Music"), Conrad Publishing Co., Inc. ("Conrad"), and Gladstone Music, Inc. ("Gladstone") for $200,000.[1] See Defendants' Exhibits L and M. Upon purchasing these catalogues, defendants assumed the songwriter agreements which Tollie Music and Conrad had made with Carter Sr. in the late 1950's. Under the songwriter agreements, Carter Sr. had relin-

quished his rights in many of his compositions, including renewal rights, in exchange for royalty payments. See Defendants' Exhibits GG, HH, and II.

Bracken, his wife Vivian, and Carter Sr. were officers and directors of Tollie Music, Conrad and Gladstone. In conjunction with the purchase agreement, the Brackens and Carter Sr. personally guaranteed and warranted that their companies were the sole and exclusive owners of the compositions in the catalogues they were selling. See Defendants' Exhibits O, P and Q. Upon determining after the sale that many of the works so warranted were in fact not owned by Tollie Music, Conrad or Gladstone, and that several other music publishers claimed rights to many of the other compositions in the catalogues defendants had purchased, defendants stopped paying royalties to Bracken.

In 1968, Carter Sr. borrowed $5,000 from defendants and pledged his rights in certain compositions as collateral. See Defendants' Exhibit X. When the loan was not repaid, defendants ceased paying royalties to Carter Sr. In 1979, Carter Sr. sought additional money from defendants, claiming for the first time that he had co-authored the composition "Goodnight, Sweetheart, Goodnight," which was generating a significant amount of income, and that Conrad had no right to sell his interest in the song to defendants. In an attempt to settle Carter Sr.'s claim, Arc agreed to pay him $4,000 in exchange for Carter Sr.'s relinquishment of all rights to receive royalties from the exploitation of his compositions. See Defendants' Exhibit EE ("the 1979 Agreement").

Plaintiffs filed this action in April, 1992, alleging copyright infringement, breach of contract, breach of fiduciary duty, fraud and seeking equitable relief. All of plaintiffs' claims, despite their varied labels, essentially seek to recover for defendants' failure to pay royalties to Carter Sr. and Bracken. Defendants have moved this Court for summary judgment on all claims pursuant to Fed. R.Civ.P. 56.

---

1. A "publishing catalogue" is the collection of compositions in which a music publisher has obtained copyrights.

## DISCUSSION

■ Summary judgment is proper when there is no genuine issue of material fact and, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### The Copyright Claims

Plaintiffs' first claim for copyright infringement alleges that defendants have illegally exploited the renewal copyrights in nine compositions authored by Carter Sr. Plaintiffs argue that they—not defendants—own the renewal copyrights in these songs and therefore seek compensation for defendants' exploitation of the compositions after the beginning of the renewal term.[2]

It is undisputed that seven of the compositions were originally copyrighted in 1958 and were renewed by defendant Arc on behalf of Carter Sr. on Jan. 27, 1986 for a renewal term commencing on January 1, 1987. It is further undisputed that by virtue of defendants' purchase of the Conrad, Tollie Music and Gladstone publishing catalogues in 1965, defendants became assignees of the renewal rights in Carter Sr.'s compositions.

Despite these facts, plaintiffs Tollie Carter and Calvin Carter, Jr. contend that they are entitled to the renewal copyrights because Carter Sr. died in July 1986, before the first day of the renewal term, and therefore defendants' renewal copyrights did not vest.

Section 304(a) of the Copyright Act of 1976, which governs plaintiffs' claims, provides that an author, if still living, may renew his copyright by application to the Copyright Office at any time during the last year of the original copyright term. 17 U.S.C. § 304(a) (1977). However, in the event that an author is no longer living, Section 304(a) provides that his widow, children, or next of kin have the right to apply for a renewal term. *Id.* The Supreme Court has interpreted this provision to mean that "when an author dies before the renewal period arrives, his executor is entitled to the renewal rights, even though the author previously assigned his renewal rights to another party." *Stewart v. Abend*, 495 U.S. 207, 219, 110 S.Ct. 1750, 1759, 109 L.Ed.2d 184 (1990), *citing Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960).

The statute is silent, however, on the question of when renewal rights vest.[3] Defendants argue the renewal rights vested upon registration, which occurred while Carter Sr. was still alive. One court in this circuit has addressed the question of when renewal rights vest under Section 304(a). *See Frederick Music Co. v. Sickler*, 708 F.Supp. 587 (S.D.N.Y.1989). In *Frederick Music*, Judge Walker adopted the position urged by defendants, finding that the right to a renewal copyright vests in the author or his assignee on the date when the copyright is renewed during the statutory period prescribed for renewal, as long as that renewal occurs while the author is still alive. 708 F.Supp. at 589. *But see Marascalco v. Fantasy, Inc.*, 953 F.2d 469 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1997, 118 L.Ed.2d 592 (1992) (finding renewal interest vests in author's assignees only if author survives to start of renewal term).

In addition, defendants point out that Congress adopted the *Frederick Music* analysis in the 1992 amendments to Section 304. The amended Section 304(a)(2)(B)(i) provides that when an application to register the copyright for a renewal term has been made within one year of the expiration of the original term,

---

**2.** Defendants assert that one of the songs named in this claim, "Here I Stand," was not written by Carter Sr. and was renewed in the name of its author, Wade Flemons. *See* Gorman Aff. ¶ 3, Exhibit FF. Plaintiffs have not disputed this.

There is also a question regarding the rights in another composition included in this claim, "Cry Over Me", which was co-authored by Carter Sr. and J.L. Robinson. The Court will address "Cry Over Me" below.

**3.** In *Stewart v. Abend*, the Supreme Court recognized there was some question regarding when renewal rights vested, but expressly stated it was not deciding that question. *See Stewart*, 495 U.S. at 220 n. 2, 110 S.Ct. at 1759 n. 2.

the renewal right vests in any person who was entitled to the renewal and extension of the copyright "at the time the application is made." 17 U.S.C.A. § 304(a)(2)(B)(i) (1992).

■ While the 1992 amendments are not applicable directly to this case, they do persuade the Court that, as between the Ninth Circuit's opinion in Marascalco and Judge Walker's opinion in Frederick Music, the Frederick Music approach better furthers congressional intent. Accordingly, defendants' renewal copyrights are valid because defendants applied for renewal during the year preceding the original term's expiration while Carter Sr. was still alive. Summary judgment is therefore appropriate on plaintiffs' first claim for copyright infringement with respect to seven compositions. Since there is no evidence that plaintiffs had any rights in the song "Here I Stand," summary judgment on plaintiffs' infringement claim involving this composition is also appropriate on that basis alone.

One composition included in the infringement claim requires a somewhat different analysis. Defendants concede they did not preserve their renewal right under Frederick Music in one composition, "Cry Over Me", because Arc renewed the copyright in that composition on behalf of its two co-authors, Carter Sr. and J.L. Robinson, on December 30, 1986, which was several months after Carter Sr.'s death. However, defendants contend that plaintiffs allowed the composition to enter the public domain by failing to file a renewal application themselves.

■ Section 304(a) of the 1976 Copyright Act provides that in the event that no application for renewal is made during the statutory period, "the copyright in any work shall terminate at the expiration of twenty-eight years from the date copyright was originally secured." 17 U.S.C. § 304(a) (1977). Thus, under the terms of the statute, when plaintiffs did not apply for renewal of the copyright during the last year of the original copyright term, the composition entered the public domain.[4]

Plaintiffs contend that Arc's renewal application in December 1986 preserved the renewal term for both Robinson and Carter Sr. When a co-author files an application for copyright renewal, "it is not necessary for the other joint owners to file separately additional renewal applications." 2 Nimmer on Copyright § 9.05[E] at 9–90 (1993). Because Carter Sr. died prior to Arc's renewal application, his children were entitled to a renewal and extension of the copyright. See 17 U.S.C. § 304(a) (1977). Thus, if Arc's renewal on behalf of Robinson was valid, then the renewal copyright would "enure[ ] to the benefit of his co-author [Carter Sr.] or of those entitled to a renewal under the provisions of the Copyright Act, if that co-author be dead." Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 42 F.Supp. 859, 865 (S.D.N.Y. 1942), aff'd, 140 F.2d 266 (2d Cir.1944).

However, it is clear that defendants' renewal on behalf of Robinson must have been valid in order for plaintiffs' interest in the renewal copyright to have been preserved. If Robinson was not alive at the time Arc registered for renewal, then, under Frederick Music, Arc's renewal rights did not vest and the renewal was invalid.

Plaintiffs have not submitted any evidence creating a triable issue of fact on whether Robinson was alive at the time Arc registered for the renewal term. Even when offered an additional opportunity to do so at oral argument, plaintiffs could not produce any evidence that Robinson was alive at the time of the renewal application. Therefore, plaintiffs have not created a triable question of fact with respect to their claim to "Cry Over Me". Summary judgment is accordingly granted on plaintiffs' claim that defendants infringed their copyright in "Cry Over Me."

In their second set of copyright infringement claims, plaintiffs allege that defendants have infringed the copyrights plaintiffs allegedly hold in fifteen compositions authored by Carter Sr. by exploiting the compositions outside the United States since the expiration of the original copyrights in the 1980's. Defendants have admitted exploiting these

---

4. The 1992 amendments significantly changed this provision, providing that the application for renewal is no longer a condition of the renewal and extension of the copyright. See 17 U.S.C. § 304(a)(3)(B) (1993).

compositions outside the United States pursuant to Arc's acquisition of the Conrad publishing catalogue.[5]

■ Summary judgment is appropriate on these claims because claims alleging copyright infringement occurring outside the United States are not actionable under federal copyright law. *See Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976) (finding performance of protected works in Canada not subject to U.S. Copyright Act because Copyright Act does not have extraterritorial operation). *See also* 3 *Nimmer on Copyright* § 17.10[A] at 17–54 (1993); *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 93 (2d Cir.1981).

Plaintiffs have also alleged copyright infringement by all defendants arising out of the unauthorized exploitation of certain unnamed compositions allegedly owned by plaintiff Costoma Music Publishing ("Costoma"). Defendants argue that plaintiff Costoma has neither set forth the specific compositions at issue nor alleged facts establishing a valid copyright interest in the compositions. Defendants also assert that plaintiff's claim is time-barred to the extent it is based on copyright infringement occurring more than three years before this suit was filed (i.e. prior to April 1989).[6] *See* 17 U.S.C. § 507 (barring claims for copyright infringement arising three years before suit brought).

However, defendants have also conceded that they may have inadvertently collected monies from some compositions belonging to Costoma. *See* Gorman Affidavit ¶ 6. Defendants have indicated they are willing to repay the amount collected to Costoma upon a clearer statement of the compositions involved and a showing of Costoma's interest in the copyrights. Accordingly, the Court will not decide this claim at this juncture, but directs plaintiff Costoma to submit a particularized list of those compositions involved, along with proof of Costoma's interest in the copyrights, to defendants.

*Non–Copyright Claims*

Plaintiffs have also alleged various forms of breach of contract, breach of fiduciary duty and fraud. All of these claims essentially seek compensation for the same wrong: defendants' failure to pay Bracken and Carter Sr. royalties under their songwriter agreements. Regardless of their merits, they are all clearly time-barred. Summary judgment is therefore granted on the remainder of plaintiffs' claims.

■ As a preliminary matter, the Court rejects plaintiffs' argument that defendants should be estopped from raising a statute of limitations defense pursuant to New York's Gen.Oblig.Law § 17–103(4)(b) (McKinney 1989). Section 17–103(4)(b) gives the court the power "to find that by reason of the conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitations ...". If a defendant's conduct was calculated to mislead a plaintiff and caused him to delay bringing suit until the statute of limitations has run, courts will not allow the defendant to benefit from his own misconduct. *See, e.g., Arbutina v. Bahuleyan*, 75 A.D.2d 84, 428 N.Y.S.2d 99, 100 (1980).

Plaintiffs contend that the defendants' refusal to pay royalties to Bracken and Carter and their alleged fraudulent misrepresentations constitute wrongful conduct sufficient to estop them from raising the limitations defense. However, as will be discussed below, the record is clear that both Bracken and Carter Sr. were aware of defendants' reasons for not paying them royalties, were familiar with the terms of their respective agree-

---

**5.** The Conrad catalogue included songwriter agreements covering these compositions in which Carter Sr. granted Conrad rights "throughout the entire world." *See* Defendants' Exhibit II and Goodman Affidavit ¶ 13. Foreign copyright law does not recognize the U.S. system of dividing copyrights into original and renewal terms. *See* 3 *Nimmer on Copyright* § 17.10[A] at 17–54 (1993). The term of protection generally adopted abroad is the life of the author plus fifty years. *Id.* Thus, Carter Sr.'s assignment of his rights is in all likelihood still valid in countries outside the U.S.

**6.** Plaintiffs have not alleged any specific time period during which the alleged infringement occurred.

ments with defendants and yet did not challenge defendants' actions.

While it is true that the question of whether or not a defendant's conduct was sufficient to estop him from raising the statute of limitations as a defense is generally a question for the fact finder, *Arbutina*, 428 N.Y.S.2d at 101, plaintiffs have not produced any evidence which could justify sending this question to a jury. Specifically, there is no evidence that defendants made any misrepresentation on which either Bracken or Carter Sr. relied which resulted in their failure to bring suit prior to the expiration of the statute of limitations.[7]

### a. Breach of Contract Claims

Plaintiffs have not produced any evidence creating a material issue of fact regarding the timeliness of their breach of contract claims. The undisputed facts presented by defendants clearly establish that the two composers knew that they were not receiving royalties due to defendants' interpretation of the various agreements between them and chose not to challenge defendants' actions at any point during their lifetimes.

■ In 1970, Bracken wrote defendants asking why he had not been receiving royalties. *See* Defendants' Exhibit Y. He was informed by defendants' attorney that defendants considered Bracken to have breached the warranties he had made regarding his ownership of at least thirty-two of the titles defendants had purchased from Conrad, and therefore defendants were holding any royalties due him as an offset against damages incurred as a result of his breach of warranty. *See* Defendants' Exhibit Z. In 1971, Bracken's attorney inquired again about defendants' withholding of royalties and was

given the same explanation. *See* Defendants' Exhibit AA and Goodman Affidavit ¶ 34. Bracken did not at any time during his life further challenge defendants' actions.

■ Carter Sr. had not received royalties from defendants since March 11, 1968, when he borrowed $5,000 from Arc and agreed to forfeit his right to receive royalties if he did not repay the loan or if Arc did not recoup the money within two years. *See* Defendants' Exhibit X. There is no dispute that Carter Sr. did not pay off the loan within two years. While the facts submitted suggest that defendant Arc did not keep track of whether it recouped the $5,000 it loaned Carter Sr., the question of whether or not defendants acted wrongfully has been rendered irrelevant by the passage of time. Carter Sr. never challenged defendants' refusal to pay royalties based on his failure to repay the loan. Moreover, Carter Sr. reaffirmed the release of his rights to royalties in the 1979 Agreement, whereby he relinquished his rights to royalties in exchange for $4,000. *See* Defendants' Exhibit EE. Carter Sr. was represented by counsel throughout the negotiations leading to this agreement. *See* Goodman Affidavit ¶ 41–42.

Since the applicable statute of limitations for breach of contract is six years, any claim against defendants for their failure to pay royalties to both Bracken and Carter Sr. has long since expired. *See* N.Y.Civ.Prac.L. & R. § 213(2) (McKinney 1990). The statute of limitations expired with respect to Carter Sr.'s claims six years from the date that defendants stopped paying him royalties based on his failure to repay the 1968 loan. With respect to Bracken, the statute of limitations expired six years after defendants decided to enforce Bracken's personal war-

---

7. The one case cited by plaintiffs, *Lipp v. Con Edison*, 158 Misc.2d 633, 601 N.Y.S.2d 659 (Civ. Ct.1993), is distinguishable on several grounds. In *Lipp*, the court found that the defendant had affirmatively misinformed plaintiff as to the reasons for its placing her in a particular billing category. Plaintiffs have not presented any evidence that the defendants affirmatively misinformed either composer about their rights under their agreements. In addition, the information given to the plaintiff in *Lipp* was not otherwise available and plaintiff had no other way of discovering whether it was incorrect. The undis-

puted facts in this case establish that, by virtue of their own participation in the various agreements now being challenged and their subsequent communications with defendants, Carter Sr. and Bracken had full knowledge of the terms of those agreements as well as defendants' reasons for refusing to pay them royalties. Finally, in *Lipp*, the plaintiff acted diligently in trying to resolve her dispute with Con Ed and bringing suit. The same cannot be said for plaintiffs in this action, who have attempted to resuscitate claims which arose over twenty years ago and were never pursued until this point in time.

ranty by withholding royalties. Summary judgement on these breach of contract claims is therefore granted.

Plaintiffs have also alleged that defendant Sunflower, which purchased the rights to certain compositions from plaintiff Gladstone in 1965, owes Gladstone royalties for the exploitation of these compositions. This claim is totally unsupported by the plain terms of the 1965 purchase agreement and is time-barred as well.

■ Under the 1965 purchase agreement, defendant Sunflower purchased all right, title and interest to the compositions owned by Gladstone. *See* Defendants' Exhibit M. Paragraph 6 of the contract provides that defendant Sunflower is to receive "all perfor-. mance monies," "all income from mechanical reproduction", and "all other income from all sources" from the compositions. *Id.* at ¶ 6. There is no mention of royalty payments to Gladstone whatsoever. Therefore, as a matter of law, defendant Sunflower had no obligation to pay Gladstone any royalties. Moreover, because this claim is essentially a breach of contract claim, the statute of limitations expired in 1971. *See* N.Y.Civ.Prac.L. & R. § 213(2). Therefore, summary judgment on this claim is also granted.

**b. Breach of Fiduciary Duty Claims**

Plaintiffs have also alleged that defendants breached their fiduciary duty to Carter Sr. and Bracken by their failure to properly account to the composers, properly credit them for compositions written by them, and pay them royalties. These claims are merely restatements of plaintiffs' breach of contract claims, and are therefore time-barred.

■ Further, even if they constituted separate claims for relief, summary judgment is appropriate. In the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law. *See, e.g., Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731, 738–39 (S.D.N.Y.1988) (finding royalty agreement was solely contractual in nature and created no fiduciary relationship between the parties); *Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1159–60 (S.D.N.Y.1988) (finding as a matter of law that relationship between composer and publisher is governed by contract principles and no fiduciary relationship exists). Because plaintiffs have not alleged any facts which could establish a special relationship between defendants and Carter Sr. and Bracken, summary judgment is granted on these claims.

**c. Fraud Claim**

■ Summary judgment is also warranted on plaintiffs' claim that Carter Sr. was fraudulently induced into signing the 1979 Agreement whereby he relinquished all rights to his compositions. This claim is clearly time-barred because plaintiffs failed to commence the action within six years from the time the alleged fraud occurred or within two years from the time they knew or should have known of the fraud. *See* N.Y.Civ. Prac.L. & R. § 213(8) (McKinney 1990).

Under the six year statute of limitations for fraud claims, the claim is time-barred because Carter Sr. was in a position to challenge both defendants' refusal to pay him royalties and the validity of the 1979 Agreement during his lifetime and never did. Furthermore, plaintiffs have admitted knowing in 1986 that Carter Sr. considered himself cheated by the agreements he made with defendants but did not bring this suit until 1992. Accordingly, both of the potentially applicable time limits have expired. Summary judgment is thus appropriate on the fraud claim.

**d. Duress and Unconscionability Claims**

■ Plaintiffs also seek rescission of the 1979 Agreement on the grounds of undue influence, duress and unconscionability. Rescission is an equitable remedy and is subject to a six year statute of limitations. *See* N.Y.Civ.Prac.L. & R. § 213(1) (McKinney 1990). A claim for rescission on the grounds of duress or unconscionability accrues upon the execution of the agreement. *See, e.g., Brown v. Tonawanda Housing, Inc.,* 123 A.D.2d 493, 507 N.Y.S.2d 92 (1986). Therefore, any claim for rescission of the 1979 Agreement expired in 1985. Accordingly, summary judgment is granted on all of these claims as well.

In sum, defendants' motion for summary judgment is granted with regard to all of plaintiffs' claims, with the exception of the copyright infringement claim against Costoma. Plaintiffs are directed to submit a particularized list of the compositions involved, along with proof of Costoma's rights to them, to defendants by April 15, 1994. In the event that this issue cannot be resolved without the Court's participation by June 1, 1994, the parties are to appear before the Court for a conference at 4:30 p.m. on that date.

SO ORDERED.