DIMENSIONAL MUSIC PUBLISHING, LLC., Plaintiff,

v.

Antoinette KERSEY, as Executrix of the Estate of Tyrone G. Kersey, Kisha Kersey, and Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Defendants.

Civ.A. No. 05–6437.

United States District Court, E.D. Pennsylvania.

June 23, 2006.

Joshua D.K. Snyder, Michael J. Boni, Kohn, Swift & Graf, P.C., Philadelphia, PA, Marc J. Goldstein, Hodgson Russ LLP, New York, NY, for Plaintiff.

Camille M. Miller, Brian J. Urban, Melanie A. Miller, Cozen & O'Connor, P.C., Philadelphia, PA, Wendy Beetlestone, William T. Hangley, Sharon Levin Lehman, Hangley Aronchick Segal & Pudlin, for Defendants.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

This lawsuit involves a dispute over the rights to the song "Disco Inferno." Plaintiff, a limited liability company engaged in music publishing, filed a motion for partial summary judgment on the specific issue of the vesting of the renewal rights to the song. The motion implicates two of the three defendants, Antoinette Kersey, Executrix of the Estate of Tyrone Kersey,

and Kisha Kersey ("the Kersey defendants"). For the reasons below, plaintiff's motion is granted.

## II. BACKGROUND

### A. *Facts*

The following facts are taken from plaintiff's Complaint.[1]

"Disco Inferno" (hereinafter the "Composition") is a legendary song of the disco era.[2] Performed by The Trampps, the Composition reached Number One on the Billboard disco chart in 1977,[3] and was enshrined in disco history when it was included on the soundtrack for the film *Saturday Night Fever*, starring John Travolta. Compl. ¶ 1. The Composition was written by two Philadelphia songwriters, Tyrone Kersey, a/k/a/ Ron "Have Mercy" Kersey ("Kersey"), and Leroy Green ("Green"). *Id.*

On January 24, 1977, Green and Kersey entered into an Agreement of Sale (hereinafter "the 1977 Agreement") with Golden Fleece Music ("Golden Fleece") and Six Strings Music ("Six Strings") to sell the Composition's "title, words and music . . . and the right to secure copyright therein throughout the entire world, and to have and to hold the said copyright and all rights of whatsoever nature thereunder existing, now known or hereafter to become known." *Id.* ¶ 20. According to plaintiff, Green and Kersey intended this Agreement to transfer the entirety of their rights to the Composition, including the renewal rights.[4] *Id.* ¶ 22. Golden Fleece and Six Strings registered the Composition's copyright with the United States Copyright Office on February 2, 1977. *Id.* ¶ 24.

The Composition then went through a series of transfers. First, Golden Fleece and Six Strings assigned all rights in the Composition to Six Strings on March 2, 1978. *Id.* ¶ 26. More than twenty years later, on February 16, 2001, Six Strings sold all of its rights, title and interest in the Composition, including expressly its renewal rights, to DreamWorks Music Publishing LLC ("Dreamworks"). *Id.*

---

**1.** Typically, the facts in a Motion for Summary Judgment are drawn from the exhibits submitted by both parties. However, under the unique procedural posture of this case, as explained below, plaintiff is moving for summary judgment on the limited issue of the vesting of renewal rights. The only facts relevant to this motion—the date Disco Inferno was created, the date plaintiff filed an application for renewal registration, and the date of the author's death—are uncontested.

**2.** The best-known portion of the song is its chorus:

Burn, baby, burn—disco inferno!

Burn, baby, burn—burn that mama down!

Burn, baby, burn—disco inferno!

Burn, baby, burn—burn that mama down!

Burnin!

**3.** Plaintiff's Complaint states that the Composition was Number One on the Billboard disco chart in 1976, not 1977. Compl. ¶ 1. However, since the Composition was not created

until 1977, this would be impossible. In a telephone conference held on March 28, 2006, counsel for plaintiff stated that the 1976 date in the Complaint was erroneous.

**4.** This issue is vigorously contested by the Kersey defendants in their Response to Plaintiff's Motion for Partial Summary Judgment. Defendants argue that because there is a strong presumption against the conveyance of renewal rights, the language in the 1977 Agreement—"said copyright and all rights of whatsoever nature thereunder existing, now known or hereafter to become known"—was insufficient to transfer the renewal rights. Defendants further argue that Kersey never intended to convey his renewal rights to another party.

For purposes of this summary judgment motion, defendants have agreed to assume that Kersey assigned his renewal rights to the Composition to plaintiff. Def. Cross–Motion at 1 n. 1. That agreement is without prejudice to defendants' right to argue to the contrary with respect to other aspects of the case.

¶ 27. Finally, on November 5, 2004, DreamWorks sold most of its music publishing catalog, including the Composition, to plaintiff for the sum of $ 42.8 million. *Id.* ¶¶ 43, 53.

## B. *The Copyright at Issue*

Under the 1992 Copyright Act, a work originally copyrighted between January 1, 1964 and December 31, 1977 is protected for an initial term of 28 years. 17 U.S.C. § 304(a)(1)(A). At the beginning of the 28th year, a one-year period begins in which the copyright may be renewed. § 304(a)(2)(A). A renewal may be effectuated by filing an application to register the renewal rights.[5] § 304(a)(2)(B)(i). Even if a renewal application is not registered during the 28th year, the party who would have been entitled to file for renewal is still accorded the renewal rights.[6] § 304(a)(2)(B)(ii). Once renewed, the copyright is protected for a second term of 67 years. § 304(a)(2)(B).

All terms of copyright run to the end of the calendar year in which the copyright expires. 17 U.S.C. § 305. Because the Composition was copyrighted on February 2, 1977, when Six Strings and Golden Fleece registered the copyright, the Composition's copyright was set to expire at the end of the 28th calendar year, on December 31, 2005. Thus, the copyright became eligible for renewal on January 1, 2005. Compl. ¶ 54. On January 5, 2005, Cherry Lane Music, Inc. ("Cherry Lane"), plaintiff's copyright administrator, filed a renewal rights registration with the Copyright Office. *Id.* ¶ 55. Shortly thereafter, on January 25, 2005, Kersey died. *Id.* ¶ 56.

## C. *The Current Lawsuit*

In August 2005, defendant Steinberg Business and Music Advisory Services[7] sent a letter to plaintiff on behalf of the Kersey Estate ("the Estate"), asserting that the 1977 Agreement never transferred Kersey's renewal rights in the Composition Six Strings and Golden Fleece, and that the Estate owned a 50% interest in the renewal rights of the Composition.[8]

---

**5.** The benefit in filing a renewal application is that a renewal certificate is *prima facie* evidence of a renewal copyright. 17 U.S.C. § 304(a)(4)(B).

**6.** Prior to the 1992 Act, failure to file an application to register the renewal rights caused the copyright to enter the public domain; the author or his statutory successors forfeited the renewal rights. *See Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.,* 380 F.3d 624, 633 (2d Cir.2004); M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* § 9.05[A][2] at 9–41 (2005).

**7.** On April 4, 2006, the Court entered an Order dismissing the action against defendants David Steinberg and Steinberg Business and Music Advisory Services pursuant to a stipulation between plaintiff and those defendants.

**8.** Because the Composition was jointly written by Kersey and Green, each had a 50% ownership interest in the copyright and in the renewal rights to the copyright. Like Kersey, Green purportedly transferred his interest in the renewal rights to Golden Fleece and Six Strings in the 1977 Agreement, which eventually sold their interests in the Composition, including the renewal rights, to DreamWorks. Despite this (possible) transfer of the renewal rights through the 1977 Agreement, Green entered into an agreement with DreamWorks on February 16, 2001 (the "February Agreement") to transfer his and his heirs' interest in the renewal rights to the Composition to DreamWorks. Compl. ¶ 29. Even so, Green acknowledged in the February Agreement and in a letter sent several weeks later that he and Kersey both intended to transfer their renewal rights in the Composition through the 1977 Agreement. *Id.* ¶¶ 29–31.

Regardless of when Green's renewal rights were transferred, they were acquired by plaintiff when plaintiff purchased the DreamWorks catalog. It is uncontested that plaintiff owns a 50% interest in the Composition.

*Id.* ¶¶ 3, 58. In response, plaintiff filed this lawsuit seeking a declaratory judgment that it is the exclusive and undisputed owner of all rights in the Composition, including the renewal rights and the right to administer the Composition during the renewal term (Claims I and II).[9] *Id.* ¶ 3–4.

### D. *The Motion for Summary Judgment*

In order for plaintiff to prevail in its case against the Kersey defendants, it must prevail on two legal arguments. First, it must prove that the 1977 Agreement transferred the renewal rights to the Composition to Golden Fleece and Six Strings, who, in turn, transferred the rights to DreamWorks and then to plaintiff. Second, plaintiff must prove that those renewal rights vested in plaintiff because it filed the renewal registration on January 5, 2005. The first legal argument will require discovery, whereas the second will not. Plaintiff moved for summary judgment on the second argument because the material facts at issue—the date of the original copyright registration, the date the renewal rights application was filed, and the date of Kersey's death—are not in dispute. If plaintiffs lose this argument, their case against the Kersey defendants is over. If plaintiffs win this argument, the case will then proceed to discovery.

The parties agree that the time at which the renewal rights vested was at the beginning of the renewal term, which was January 1, 2006. However, the parties dispute in *whom* those rights vested. Plaintiff argues that the renewal rights vest in the *person* entitled to the renewal of the copyright *at the time the application for renewal rights is made,* so long as the author is still alive at that time, and so long as the application is submitted during the 28th year of the initial term. Under this logic, the renewal rights vested in plaintiff, who applied for renewal rights to the Composition on January 5, 2005, when the author, Kersey, was still alive. Defendants, on the other hand, argue that the death of Kersey on January 25, 2005 caused the renewal rights to revert to Kersey's statutory beneficiaries, and the renewal rights vested in those beneficiaries on January 1, 2006.

## III. LEGAL STANDARD

### A. *The 1992 Copyright Act*

Plaintiff's argument is governed by § 304 of the 1992 Copyright Act, which provides, in relevant part:

(a)(1)(A) Any copyright, the first term of which is subsisting on January 1, 1978, shall endure for 28 years from the date it was originally secured.

. . . .

(C) In the case of any other copyrighted work. . . .

(i) the author of such work, if the author is still living,

(ii) the widow, widower, or children of the author, if the author is not living,

(iii) the author's executors, if such author, widow, widower, or children are not living, or

(iv) the author's next of kin, in the absence of a will of the author

---

**9.** In the event that the Court finds that plaintiff did not obtain the renewal rights to the Composition when it purchased the DreamWorks catalog, plaintiff asserts a legal malpractice claim against defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), who was retained by plaintiff to address copyright issues in the acquisition and perform due diligence. Compl. ¶ 5. Defendant Paul Weiss has filed a separate Motion to Dismiss or Stay.

shall be entitled to a renewal and extension of the copyright in such work for a further term of 67 years.

. . . .

(a)(2)(B) At the expiration of the original term of copyright in a work specified in paragraph (1)(C) of this subsection, the copyright shall endure for a renewed and extended further term of 67 years, which—

(i) if an application to register a claim to such further term has been made to the Copyright Office within 1 year before the expiration of the original term of copyright, and the claim is registered, *shall vest, upon the beginning of such further term, in any person who is entitled under paragraph (1)(C) to the renewal and extension of the copyright at the time the application is made;*

(ii) if no such application is made or the claim pursuant to such application is not registered, shall vest, upon the beginning of such further term, in any person entitled under paragraph (1)(C), as of the last day of the original term of copyright, to the renewal and extension of the copyright.

17 U.S.C. § 304 (emphasis added).

■■■■ Typically, when an author dies during the original copyright term, the question of who is entitled to the renewal term is determined by the statutory succession of § 304(a)(1)(C).[10]  *See Miller Music Corp. v. Charles N. Daniels, Inc.,* 362 U.S. 373, 376, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). While authors may freely assign their right to the renewal term, *Fred Fisher Music Co. v. M. Witmark & Sons,*

318 U.S. 643, 656, 63 S.Ct. 773, 87 L.Ed. 1055 (1943), this assignment is merely an expectancy in the renewal term. *Miller Music,* 362 U.S. at 375, 80 S.Ct. 792. The author's death, prior to the renewal period, terminates the author's interest in the renewal, and the assignee's interest as well. *Id.* The right to the renewal term then passes by statutory succession.

Section 304(a)(2)(B)(i) creates a narrow exception to the above rules—an application for the renewal term may be filed with the Copyright Office during the 28th year. The effect of such an application is to vest the right to the renewal term in the person entitled to it under section (1)(C). If the author is alive when the application is made, then the right to the renewal term vests in him. And if the author has assigned his expectancy in the renewal term to a third party, that expectancy is realized upon the filing of the application, and the third party assignee is entitled to the renewal term.

Before the 1992 Act, the question of who obtained renewal rights was always determined by the timing of the renewal vesting. M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* § 9.05[C][2] at 9–81 (2005). The effect of the 1992 Act was to separate the inquiry of who is entitled to the renewal rights from the inquiry of who is alive when renewal vests. *Id.*

With respect to instances in which renewal registration has been effectuated on a timely basis within the last year of the original term, notwithstanding that the renewal for such work does not vest until the first day of the renewal term, nonetheless the *party* in whom such re-

---

**10.** The Copyright Act has always had a provision specifying the order of succession. *See Capano Music, Div. of Britone v. Myers Music,* 605 F.Supp. 692, 695 (S.D.N.Y.1985) ("Copyright renewal rights do not pass under the usual rules of testamentary or intestate succession, but rather under the provisions of § 304(a) of the Copyright Act."). The current version, found at 17 U.S.C. § 304(a)(1)(C), provides for succession to the widow, widower, or children, then the executor(s), and then, in the absence of a will, to the author's next of kin.

newal vests is 'any person who is entitled under 'the rules of statutory success' to the renewal of the copyright *at the time the application is made.*' By virtue of the italicized language, the date of renewal registration becomes determinative for ascertaining the party entitled to ownership of the renewal term. *Id.* (emphasis original).[11]

■ The Copyright Act United States Copyright Office also interprets the 1992 Act in this way:

> The renewal copyright vests in the name of the renewal claimant on the effective date of the renewal registration. For example, if a renewal registration is made in the 28th year and the renewal claimant dies following the general registration but before the end of the year, the renewal copyright is secured on behalf of the renewal claimant.

United States Copyright Office, *Renewal of Copyright,* Circular 15, at 2 (2005).[12] In fact, the Copyright Office notes that "if the renewal registration is not made in the 28th year, the renewal copyright will vest on the first day of the renewal term in the party entitled to claim renewal as of December 31 of the 28th year." *Id.*

## B. Relevant Case Law

### 1. Cases interpreting the renewal provisions in the 1992 Copyright Act

The provision of the 1992 Copyright Act which governs this case covers a limited time period, as it only applies to works created between January 1, 1964 and December 31, 1977. Nimmer at 9–41. Moreover, the problem in this case only arises in limited circumstances: when an author dies during the 28th year of the copyright, after an assignee has filed an application for renewal rights, but before the end of the 28th year. Thus, it is not surprising that no court has ever determined who holds the renewal rights in this situation.

One case under the 1992 Copyright Act addresses the vesting of renewal rights in passing. *Venegas–Hernandez v. Peer,* 283 F.Supp.2d 491 (D.P.R.2003). At issue in *Venegas–Hernandez* was whether the wid-

---

11. This interpretation is supported by other commentators

> [The 1992 Act] now provides that renewal rights will vest upon commencement of the renewal term, if an application has been made to register the renewal before the end of the first term of copyright—and assuming the renewal claim is ultimately registered—in the person entitled to renewal at the time the application is made. Thus, if renewal is made in the 28th year, but the registered renewal claimant does not survive into the commencement of the renewal term, the renewal will nonetheless vest in that registered claimant. As a result, an author registering a renewal prior to expiration of the 28th year will receive the renewal rights—*and thereby validate any prior assignment of such rights to a third party*—even if the author then dies prior to actual commencement of the renewal term.

William M. Hart and Roy S. Kaufman, "An Overview of the Copyright Renewal Amendment and Its Impact on Renewal Practices Under U.S. Law," 17 Colum.—VLA J.L. & Arts 311, 322 (1993) (emphasis added); *see also* Bruce P. Keller and Jeffrey P. Cunard, Practicing Law Institute, *Copyright Law* § 7:4.4 (2005) at 7–18 ("The amended section 304(a)(2)(B)(i) provides that when an application to register the copyright for a renewal term has been made within one year of the expiration of the original term, the renewal right vests in any person who was entitled to the renewal term 'at the time the application is made.' ").

12. Courts generally give weight to the interpretation of a statute by the Copyright Office. *Bonneville Int'l Corp. v. Peters,* 153 F.Supp.2d 763, 771 (E.D.Pa.2001), *aff'd,* 347 F.3d 485 (3d Cir.2003). "The Supreme Court has thus indicated that it would defer to the Copyright Office when the latter actually interpreted the statute." *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am.,* 836 F.2d 599, 609 (D.C.Cir.1988).

ow of an author had the renewal rights to his compositions, and whether she had assigned those rights to the author's children. *Id.* at 494. In its brief description of the renewal rights scheme created by the 1992 Act, the court stated that "[t]he author may assign his interest in the copyright renewal term during its original term, but the assignment is valid only if the author is alive at the start of the renewal term." *Id.* at 499. Thus, the court interpreted the 1992 Act to require that the author survive until the renewal term commences in order for the renewal rights to vest in an assignee.

### 2. Other cases addressing the vesting of renewal rights

Prior to the passage of the amendments creating the 1992 Copyright Act, only three cases—two decided by courts in the Southern District of New York, and one decided by the Court of Appeals for the Ninth Circuit—squarely addressed the question of when renewal rights vest (as opposed to addressing the issue in passing as in *Venegas–Hernandez*). All three cases were decided under the 1976 Copyright Act, not the 1992 Copyright Act. Because there are no cases directly addressing the vesting of renewal rights under the 1992 Act, the Court looks to the cases under the 1976 Act for guidance.

The 1976 Act provided, in relevant part: Any copyright, the first term of which is subsisting on January 1, 1978, shall endure for twenty-eight years from the date it was originally secured ... provided ... that in the case of any other copyrighted work ... the author of such work, if still living ... *shall be entitled to a renewal* and extension of the copyright in such work for a further term of forty-seven years *when application for such renewal and extension shall have been made to the Copyright Office* and duly registered therein within one year

prior to the expiration of the original term of copyright.

17 U.S.C. § 304(a).

The first case on vesting of renewal rights under the 1976 Act was *Frederick Music Co. v. Sickler,* 708 F.Supp. 587 (S.D.N.Y.1989). The court found the statutory language of the 1976 Act "clear," stating:

If a copyright is renewed by or on behalf of the author during the statutorily provided period, the author becomes 'entitled' to the extension of the original copyright. And this entitlement arises 'when application for such renewal and extension shall have been made to the Copyright Office and duly registered therein.' There is no mention of survivorship in the language of the statute. Thus, the renewal copyright plainly vests in the author or his assignee upon application and registration with the Copyright Office, if the author is still living at the time of such application and registration.

*Id.* at 589. The court recognized that earlier copyright statutes had required that the author survive until the expiration of the original copyright term in order for the renewal rights to vest in an assignee. *Id.* at 590. However, it discarded this history as "irrelevant," *id.* at 589, because those statutes, unlike the 1976 statute, did not create an affirmative right to renew during a statutorily created renewal period prior to the beginning of the renewal term. *Id.* at 590.

The next case on vesting was *Marascalco v. Fantasy, Inc.,* 953 F.2d 469 (9th Cir.1991), which, unlike the *Frederick Music* Court, found that § 304(a) of the 1976 Copyright Act had two possible interpretations. *Id.* at 471. Thus, the Court of Appeals looked to the legislative history of the Act and the history of earlier copyright statutes. *Id.* A two-judge majority con-

cluded that Congress did not intend to eliminate the requirement that the author survive until the start of the renewal term, based in part on the legislative history of the 1909 Copyright Act. *Id.* at 473. The Ninth Circuit recognized that the *Frederick Music* Court had reached the opposite outcome, but disregarded the *Frederick Music* opinion because it had rejected legislative history prior to 1870. *Id.* at 475.

The dissenting judge in *Marascalco* rejected the majority's view that the statute was subject to two possible interpretations. "The language of 17 U.S.C. § 304(a) is clear .... on its face, the statute provides that renewal rights vest upon the filing of an application for renewal." 953 F.2d at 476. The dissent also looked to the legislative history of previous copyright statutes, and found it "devoid of any detailed discussion" about the vesting of renewal rights. *Id.* Because later copyright statutes deleted the requirement of survivorship, the dissent concluded that "Congress deleted the language to make it clear that registration vests the renewal rights." *Id.*

The third and final case on vesting of renewal rights under the 1976 Act was *Carter v. Goodman Group Music Publishers*, 848 F.Supp. 438 (S.D.N.Y.1994). Of this trilogy of cases, *Carter* is the most instructive because, although it was decided under the 1976 Copyright Act, it looked to the then-recently passed 1992 amendments to the Act. *Id.* at 441. "While the 1992 amendments are not applicable directly to this case, they do persuade the Court that, as between the Ninth Circuit's opinion in *Marascalco* and Judge Walker's opinion in *Frederick Music*, the *Frederick Music* approach better furthers congressional intent." *Id.* at 442. Thus, the *Carter* court held:

> The amended Section 304(a)(2)(B)(i) provides that when an application to register the copyright for a renewal term has been made within one year of the expiration of the original term, the renewal right vests in any person who was entitled to the renewal and extension of the copyright 'at the time the application is made.'

*Id.* at 441–42.

## IV. ANALYSIS

■ The Court concludes that the language of the 1992 Copyright Act at 17 U.S.C. § 304(a)(2)(B)(i) is clear: while renewal rights do not vest until the beginning of the renewal term, they vest in the person entitled to renewal at the time the application for renewal rights was filed, so long as the author is alive at the time that the renewal application was filed.[13] Because Kersey assigned his renewal rights to plaintiff in the 1977 Agreement,[14] and plaintiff filed the application for renewal rights while Kersey was still alive, plaintiff was entitled to the renewal rights at the time the application was made on January 5, 2005. Therefore, the renewal rights vested in plaintiff on January 1, 2006.

**13.** Because the Court concludes that the statutory language of 17 U.S.C. § 304(a)(2)(B)(i) is clear, it need not look to legislative history for guidance. *United States v. Gonzales*, 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *United States v. Bowers*, 432 F.3d 518, 522–23 (3d Cir.2005). However, the Court notes that in the House Report accompanying the 1992 amendments to the Copyright Act, it states that registering the renewal rights during the 28th year "would assure the author or other claimant that his or her right to the renewal term vested on registration, even if he or she died later that year." H.R.Rep. No. 102–379(I), *reprinted in* 1992 U.S.C.C.A.N. 166, 172.

**14.** Again, for purposes of this Partial Motion for Summary Judgment only, defendants and the Court assume that the 1977 Agreement transferred Kersey's renewal rights to Golden Fleece and Six Strings.

The Court is not persuaded by the statement in *Venegas–Hernandez* that "[t]he author may assign his interest in the copyright renewal term during its original term, but the assignment is valid only if the author is alive at the start of the renewal term." 283 F.Supp.2d at 499. First, the *Venegas–Hernandez* opinion cites *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 374–75, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960) to support this statement. However, *Miller* involved an interpretation of the 1909 Copyright Act, not the 1992 Copyright Act, which, as discussed above, changed the vesting of renewal rights. Second, the *Venegas–Hernandez* Court was not squarely addressing the question of when and in whom renewal rights vest, and thus the court's statement on vesting is dicta.[15]

Three judges to squarely address the vesting of renewal rights—Judge Walker in *Frederick Music*, Judge Martin in *Carter*, and Judge Thompson, author of the dissent in *Marascalco*—agree with the Court's view on when and in whom renewal rights vest. Both *Carter* and *Frederick Music* held that the renewal rights vest "in the author or his assignee upon application and registration with the Copyright Office, if the author is still living *at the time of such application and registration.*" *Frederick Music*, 708 F.Supp. at 589 (emphasis added); *Carter*, 848 F.Supp. at 442 ("[T]he renewal right vests in any person who was entitled to the renewal and extension of the copyright *at the time the application is made.*") (emphasis added).

In arguing that Kersey's death caused the renewal rights to vest in his statutory successors, defendants rely on § 304(a)(2)(B) *(ii)*, as opposed to *(i)*. Subsection (ii) states:

> [I]f no such application is made or the claim pursuant to such application is not registered, [the copyright] shall vest, upon the beginning of such further term, in any person entitled under paragraph (1)(C), as of the last day of the original term of copyright, to the renewal and extension of the copyright.

Def. Cross–Motion at 6–7. Under this provision, defendants argue that the renewal rights vest in the party entitled to renewal pursuant to § 304(a)(1)(C), not in the registering party. Furthermore, defendants argue that plaintiff is not a "person entitled under paragraph (1)(C)." And simply because plaintiff obtained a renewal certificate, defendants argue, does not mean that it obtained the renewal copyright. *Id.* at 7.

■ The Court concludes that defendants' arguments are inapposite for several reasons. First, section (ii) of 304(a)(2)(B) only applies "*if* no such application is made or the claim pursuant to such application is not registered" (emphasis added). In this case, however, an application for renewal rights was filed by plaintiff on January 5, 2005. Second, while a renewal certificate is not conclusive evidence of a renewed copyright, it is *prima facie* evidence of a renewal copyright. 17 U.S.C. § 304(a)(4)(B). Third, while plaintiff is not a "person entitled under paragraph (1)(C)," it is the assignee of a person entitled under paragraph (1)(C). It has long been established precedent that authors are "free to assign their renewal interests." *Fred Fisher*, 318 U.S. at 656, 63 S.Ct. 773.[16] Nothing in the 1992 Copyright Act changed this precedent.

---

15. In fact, the court did not look to or cite any of the three cases which squarely addressed the vesting issue, *Frederick Music, Marascalco,* and *Carter.*

16. While authors are "free to assign their renewal interests," there is a "strong presumption against the conveyance of renewal rights." *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 684 (2d Cir.1993).

Defendants also cites three cases interpreting the 1992 Copyright Act and assert that they hold "that if the author is deceased at the time of renewal, but is survived by a spouse and/or children, the renewal copyright vests in the surviving spouse and children." Def. Cross–Motion at 8. However, the cases cited by defendants are not directly on point. In the first case, *Martha Graham School and Dance Found., Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 645 (2d Cir.2004) the author died six years before the application for renewal was made; thus, the party to whom the author had assigned the renewal rights could not possibly renew those rights. In the second case, *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir.2005), the Court briefly outlined the renewal copyright scheme before addressing the question at issue, which was who, among a deceased author's widow and children, held what share of the renewal rights. *Id.* at 764, 766–67. The Sixth Circuit stated that "[i]f the copyright is renewed during the author's lifetime, the renewal copyright vests in the author. If the author is deceased at the time of renewal but is survived by a spouse and/or children, the renewal copyright vests in the surviving spouse and/or children." *Id.* (internal citations omitted). However, the court did not address the question at issue in this case: what happens when the copyright is renewed during the author's lifetime by an assignee. Moreover, the court also stated that "[o]nce the twenty-eight year copyright period has expired, the copyright will be renewed for a term of sixty-seven years *either by registration* or, in the absence of registration, automatically." *Id.* (emphasis added). Thus, *Broadcast Music* suggests that, in the instant case, the renewal rights vested in plaintiff because it filed an application to register the renewal rights when Kersey was still alive. Finally, defendants cite to *Venegas–*

*Hernandez v. Peer*, 283 F.Supp.2d 491, 499 (D.P.R.2003). However, as discussed above, this analysis was dicta.

## V. CONCLUSION

Based on the plain language of the 1992 Copyright Act, 17 U.S.C. § 304(a)(2)(B)(i), the Court concludes that, assuming Kersey made a valid transfer of the renewal rights, the renewal rights to the Composition vested in plaintiff as a result of the application for renewal rights filed on January 5, 2005. Plaintiff's Motion for Partial Summary Judgment on this issue is granted. The case will now proceed on the question of whether Kersey's renewal rights were transferred by the 1977 Agreement. An appropriate Order shall follow.